KRAMER LLP
Robert F. Kramer (SBN 181706)
rkramer@kramerllp.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@kramerllp.com
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (415) 419-1895

UMHOFER, MITCHELL & KING LLP
Margaret E. Dayton (SBN 274353)
peggy@umklaw.com
767 S. Alameda Street, Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979

KRAMER LLP
Safraz Ishmael (*pro hac vice*)
sishmael@kramerllp.com
560 Harrison Avenue, Suite 214
Boston, MA 02118
Telephone: (212) 631-7565

KRAMER LLP
Robert Mattson (*pro hac vice*)
rmattson@kramerllp.com
Jeffrey Ahdoot (*pro hac vice*)
jahdoot@kramerllp.com
2121 Eisenhower Avenue, Suite 304
Alexandria, VA 22314
Telephone: (917) 720-0295

*Attorneys for Plaintiff*
*Polaris PowerLED Technologies, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

POLARIS POWERLED TECHNOLOGIES, LLC,

Plaintiff,

v.

SANDISK CORPORATION, and SANDISK TECHNOLOGIES, INC.,

Defendants.

Case No. 2:24-cv-02864-ODW-MAR

**DECLARATION OF STEVEN PRZYBYLSKI IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER AND EXTEND THE DISCOVERY CUTOFF AND EXPERT DEADLINES**

Discovery Cutoff: Oct. 16, 2026
Pretrial Conference: May 10, 2027
Trial: June 1, 2027

Date: October 5, 2026
Time: 1:30 p.m.
Courtroom: 5D

I, Steven Przybylski, hereby declare as follows

1. I have been retained as a technical consultant by Polaris PowerLED Technologies, LLC ("Polaris") regarding the above-captioned litigation involving U.S. Patent No. 8,554,968 ("the '968 patent"), U.S. Patent No. 9,183,085 ("the '085 patent"), and U.S. Patent No. 8,601,346 ("the '346 patent") (collectively, the "patents-in-suit").

2. I understand that Polaris is filing a motion to modify the scheduling order and extend the fact and expert discovery cutoff deadlines in part due to significant deficiencies with defendants' discovery. As part of my consulting responsibilities, I have reviewed the technical documents produced by current defendants SanDisk Corporation and SanDisk Technology, Inc., as well as former defendants Western Digital Corporation and Western Digital Technologies, Inc. (collectively, "SanDisk"). I also conducted three separate on-site source code reviews most involving several visits to the secure room and computer (February 17, 2026, June 22, 2026, and July 7, 2026). Based on my review of these materials, I concluded that numerous relevant technical documents and source code were missing from SanDisk's productions. Examples of these deficiencies are described in more detail below.

3. SanDisk produced highly relevant hardware schematic documents (e.g., WDTECH0009433) containing block diagrams and flow charts for a single accused controller, but there were no similar documents for the many other controllers accused of infringement in this case. Moreover, SanDisk did not produce any additional information or documents about the various blocks in the diagrams or to which controllers or platforms that information would apply.

4. Many of the technical documents produced by SanDisk reference other relevant documents that were not produced. Most of the referenced documents are easily identified by file names in charts contained within the produced document. Many of these documents appear to be highly relevant just from the document names

alone.

5. The technical documents that were produced by SanDisk only contain certain versions of those documents, the latest of which seem to be around 2019.

6. SanDisk's production appears to contain incomplete sets of technical documents for each SanDisk controller. The controller of the accused SanDisk solid-state drives are central to many of Polaris' infringement allegations in the matter. Polaris has identified approximately 12-15 different controllers that are used in the accused products. There appears to only be a disparate assortment of documents produced from a few controllers in the production. There is not a complete set of relevant technical documents for each accused controller in the production, as I would have expected if there was a fulsome document production of all relevant technical features in the litigation.

7. I was informed that SanDisk produced additional technical documents only a few weeks ago, on August 18, 2026. I was provided the documents in this August 18 production. Although many of the deficiencies described above were not resolved in this production, the technical documents that were produced, which include dense specification and architecture documents, appear highly relevant and will take significant time to analyze and reconcile with the analysis I have already completed on the litigation. Examples of the type of relevant documents that were produced in the August 18 production include architecture specifications for certain controllers, parity generation specifications, programmers reference guides for certain controllers, and product design specifications, among other things.

8. I spent approximately 45 hours reviewing SanDisk's source code production in three separate trips to counsel's offices in San Francisco. During my first visit, I discovered that the code produced on the review computer was missing significant files, and in some cases, entire folder structures. This was apparent in light of a document in SanDisk's production showing an image of a full code directory structure for a code module (e.g., WDTECH0000346), but that same full directory

was not on the source code computer.

9. After I noted these issues to Polaris's counsel, my understanding was they would be resolved by SanDisk's counsel in advance of my next visit. However, during my second and third visits, the same problems persisted, and significant portions of the code and file structures were still missing. It became apparent that only selected portions of code were provided rather than the entire structure, which is significantly detrimental to a source code reviewer in conducting code review for accused products that involve highly integrated functionality. And, although the accused products include both firmware and hardware coding, I discovered that principally firmware code was produced on the source code computer. In my opinion, review of the hardware code will also be important in understanding the totality of any SanDisk infringement.

10. I believe that the deficiencies described above have significantly hampered my own review of the accused functionality, and if these documents are eventually produced by SanDisk, significant additional time will be required to review them and incorporate them in my analysis for the litigation.

Dated: September 3, 2026

Respectfully submitted,



By: Steven Przybylski