KEKER, VAN NEST & PETERS LLP
RYAN K. WONG #267189
rwong@keker.com
ERIN E. MEYER #274244
emeyer@keker.com
ERIC HANSON #254570
ehanson@keker.com
KELLY S. KAUFMAN #328827
kkaufman@keker.com
ASEEM MEHTA #338020
amehta@keker.com
AMRUTHA DORAI #352697
adorai@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants
Sandisk Corporation and
Sandisk Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SANDISK CORPORATION and SANDISK TECHNOLOGIES, INC.,<br><br>Defendants. | Case No. 2:24-cv-02864-ODW-MAR<br><br>**SANDISK'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER AND EXTEND THE DISCOVERY CUTOFF AND EXPERT DEADLINES**<br><br>Dept: Courtroom 5D, 5th Floor<br>Judge: Hon. Otis D. Wright II<br><br>Date: October 5, 2026<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

A. Sandisk's responses to Polaris's discovery requests ........ 2

B. Polaris's source code review ........ 4

C. Polaris's L.R. 37-1 Letters ........ 5

D. Sandisk's proposed compromise ........ 5

III. ARGUMENT ........ 6

A. Polaris fails to demonstrate "good cause" under Rule 16(b)(4). ........ 6

1. There are no discovery disputes requiring Court intervention, and all depositions have been scheduled ........ 7

2. The Court's Order substituting Sandisk as the defendant in this case does not constitute good cause ........ 8

3. To the extent Polaris does need an extension, Polaris has failed to act diligently ........ 9

B. Polaris's proposed extension would prejudice Sandisk and disrupt the Court's schedule ........ 11

IV. CONCLUSION ........ 12

## I. INTRODUCTION

Plaintiff Polaris PowerLED Technologies, LLC ("Polaris") asks this Court to disrupt the case schedule to accommodate a motion to compel that Polaris has not filed—and, following the parties' recent meet-and-confer efforts, may never file. Moreover, there is no reason to believe that depositions cannot be completed before the October 16 fact-discovery cutoff; nine depositions have already been scheduled, and those that remain will soon be calendared. Therefore, the central premise of Polaris's motion does not exist.

Nor can Polaris establish good cause for an extension based on its remaining complaints. Defendants Sandisk Corporation and Sandisk Technologies, Inc. (together, "Sandisk") have diligently produced technical and financial documents and thousands of source-code files, and have responded promptly whenever Polaris requested additional materials. Polaris, by contrast, waited months between reviewing source code and sending follow-up requests, did not begin depositions until the final month of discovery, and served substantial new discovery—including contention interrogatories—right before the discovery cutoff date. Rule 16 does not permit a party to manufacture good cause through its own delay.

Polaris's proposed schedule modifications are also unworkable. They would compress expert depositions from four weeks into nine days, and leave only six days between the close of expert discovery and the dispositive-motion deadline, prejudicing Sandisk and risking further disruption to the Court's schedule. To avoid burdening the Court with this dispute, Sandisk offered a reasonable compromise: two additional weeks to complete fact depositions, without disturbing any later deadlines set by the Court. Polaris rejected it. The Court should deny Polaris's motion or, at most, adopt Sandisk's narrowly tailored alternative.

## II. BACKGROUND

Polaris filed its initial complaint in this action on April 9, 2024 (Dkt. 1) and a First Amended Complaint on June 21, 2024 (Dkt. 40). Both complaints named

Western Digital Corporation and Western Digital Technologies, Inc. (collectively, "Western Digital") as defendants, but the Court granted Western Digital's motion to substitute Sandisk as the defendant on August 18, 2026. Dkt. 134.[1] The Court issued the currently operative Scheduling Order on January 9, 2026, Dkt. 86, with a fact discovery cutoff of October 16, 2026 and trial set for June 1, 2027.

### A. Sandisk's responses to Polaris's discovery requests

Sandisk has been actively and diligently responding to discovery requests throughout this case.

On October 2, 2024, Polaris served infringement contentions pursuant to the Patent Local Rules for the Northern District of California, which have been adopted in this case. Meyer Decl. ¶ 4. Those infringement contentions purported to accuse a laundry list of products of infringement, but only included a single chart for each asserted patent, which was limited to the WD Black-branded solid-state drives ("SSDs"). *Id.* Also on October 2, 2024, Polaris served its first set of interrogatories and requests for production seeking information about numerous "Accused Products" that had not been charted in the infringement contentions. *Id.* ¶ 5. Sandisk sent a letter on November 1, 2024, explaining that Polaris had not properly accused any products other than WD Black of infringement, because the Patent Local Rules require disclosure of asserted claims and infringement contentions that include "a chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." *Id.* ¶ 6 (quoting Patent L.R. 3-1(c)). Accordingly, Sandisk notified Polaris that its discovery responses would be limited to the accused product properly included in the case: WD Black. *Id.* Thereafter, Sandisk produced technical and financial information

[1] This opposition brief refers to Sandisk's discovery responses and Sandisk's document productions to include productions made and responses served previously by Western Digital. By agreement of the parties, Sandisk will adopt Western Digital's prior discovery responses and document productions, but will re-serve such responses and productions in Sandisk's name to avoid jury confusion. Declaration of Erin E. Meyer ("Meyer Decl.") ¶ 3.

related to the WD Black product line, along with other information, on December 16, 2024. *Id.* ¶ 5.

On January 13, 2025, Polaris sent Sandisk a draft of proposed amendments to its infringement contentions that included information about other SSD products, in an attempt to bring those products into the case as accused products.[2] *Id.* ¶ 7. The parties then filed a joint stipulation on February 3, 2025, agreeing to formal service of both amended infringement contentions and amended invalidity contentions, Dkt. 57, which the Court approved in a Minute Order. Dkt. 59. Thereafter, Sandisk collected and produced additional documents related to additional accused product lines and further prepared a source code computer for Polaris's review. Meyer Decl. ¶ 8.

On June 23, 2025, the Court granted Defendants' Motion to Stay "pending final exhaustion of all pending *inter partes* review proceedings." Dkt. 68. That stay was lifted on December 17, 2025. Dkt. 79. Accordingly, neither Sandisk nor Polaris engaged in discovery between June and December 2025.

Throughout the winter and spring of 2026, Sandisk diligently responded to Polaris's written discovery requests, including by updating previous responses that Polaris claimed were insufficient. Meyer Decl. ¶ 9. Although Sandisk is confident that its document production (and source code production described below) have been more than sufficient to disclose the design and operation of the accused products, Polaris has continued to request production of additional similar documents. Sandisk has engaged in the meet-and-confer process cooperatively and in good faith, and produced additional requested documents in June, July, and August 2026. *Id.* Sandisk made a final production of certain requested documents on September 4, 2026. *Id.* All of these productions were made well in advance of

[2] Sandisk continues to dispute the adequacy of Polaris's amended infringement contentions, and understands that Polaris may seek leave of this Court to further amend its infringement contentions.

any depositions noticed by Polaris, the earliest of which is September 17, 2026. *Id.* ¶ 12.

**B. Polaris's source code review**

Following the order lifting the stay, on February 6, 2026, Polaris sent Sandisk a notice indicating its intent to review source code at Sandisk's counsel's office from February 16-20, 2026. Meyer Decl. ¶ 13. Because counsel's office was closed on February 16 for the President's Day holiday, Polaris's reviewers examined the source code on February 17-19, 2026.[3] Despite having requested the space and related amenities to review source code on February 20, no one showed up or notified Sandisk that review would not take place. *Id.* ¶ 13.

Following this review, Polaris did not raise any issues regarding purported deficiencies in the produced source code for two and a half months. On April 30, Polaris demanded production of additional code. *Id.* ¶ 15. Sandisk immediately investigated the issues raised by Polaris and made more than 6,600 additional source code files available to review on May 22, June 12, and June 18, 2026. *Id.*¶ 16. Polaris came to Sandisk's counsel's office to inspect source code on June 22 and July 7-9, 2026. *Id.* ¶ 17; Dkt. 135-20.

Polaris did not raise any complaints with respect to the adequacy of Sandisk's source code production between July 9 and August 21, 2026.[4] Meyer Decl. ¶ 18. On August 21, Polaris demanded production of several additional source code folders, which Sandisk reviewed and determined to be unrelated to the Accused Instrumentalities. *Id.* Nevertheless, in an attempt to avoid an unnecessary

[3] During the review on February 18, 2026, Polaris notified Sandisk that the source code computer contained some Microsoft Word and PowerPoint files they wished to review. At their request, counsel for Sandisk promptly installed the necessary software to enable that review on the computer. Meyer Decl. ¶ 14.

[4] Polaris did, however, request that Sandisk stamp and produce certain Microsoft Word and PowerPoint documents that were included on the source code computer. Sandisk agreed to do so, despite the fact that more than half of those documents had already been produced and the others were nearly identical to other previously produced documents. Meyer Decl. ¶ 19. These documents from the source code computer were produced on July 17, 2026. *Id.*

dispute, Sandisk made the requested folders available for Polaris's review on September 4, 2026. *Id.*

**C. Polaris's L.R. 37-1 Letters**

Polaris's motion notes that it has "start[ed] the motion to compel process, pursuant to L.R. 37-1" by sending a letter on August 28, 2026. Mot. at 5 (citing Ex. 18). That letter contains eight categories of purported deficiencies. *Id.* On September 8, 2026, the parties met and conferred regarding this letter. Following that discussion, the parties confirmed that there were no live disputes raised in the letter that require Court intervention. Meyer Decl. ¶ 20. For example, category 6 complains about "inadequate responses to interrogatories," but fails to acknowledge Sandisk's supplemental interrogatory responses that were previously served on August 21, 2026. *Id.* ¶ 21. During a meet-and-confer, Polaris confirmed that the issue raised in category 6 had been resolved. *Id.* Additionally, category 8 complains about a purported failure to reproduce certain documents that had originally been produced on the source code computer. Sandisk has explained to Polaris that all of these documents had already been produced on July 17, 2026, more than a month before Polaris sent its L.R. 37-1 letter. *Id.* ¶ 22.

In summary, all of the categories raised in Polaris's letter were either the result of a misunderstanding, or had already been resolved by Sandisk's productions prior to the parties' meet-and-confer. Meyer Decl. ¶ 23. Accordingly, Polaris has not filed (and, in Sandisk's view, has no good-faith basis to file) the motion to compel referenced in the motion to modify the scheduling order.

**D. Sandisk's proposed compromise**

Polaris's motion states that a L.R. 7-3 conference of counsel took place on August 26, 2026. Mot. at 2. At that time, counsel for Polaris generally asked for Sandisk's position on schedule modification, but they did not propose specific dates. Following that call, Polaris proposed the schedule modification sought in the motion. Sandisk evaluated the proposal, and determined that the proposal was not

workable for the following reasons: (1) it would reduce the time between service of rebuttal expert reports and the deadline to take expert depositions from four weeks to nine days; (2) it would reduce the time to prepare motions for summary judgment after the expert discovery cutoff from two weeks to six days; (3) it would require the preparation of rebuttal expert reports over the winter holidays, when Sandisk's experts and counsel have preexisting personal commitments; and (4) it would require expert depositions to occur during the first week of the spring semester, when one of Sandisk's two technical experts will be teaching multiple courses at the University of California at San Diego. Meyer Decl. ¶ 26.

Although Sandisk could not agree to Polaris's proposal, Sandisk nonetheless sought to reach a compromise to avoid motion practice. On September 3, 2026, counsel for Sandisk proposed a two-week extension of the period in which the parties could complete fact depositions, without any change to the remaining deadlines. *Id.* ¶ 27. This would provide Polaris substantially more time—eight weeks versus six weeks—to take fact depositions (which it has not yet begun) while allowing experts to prepare opening reports in parallel. *Id.* Polaris rejected this proposal and filed the instant motion. Dkt. 135-21.

## III. ARGUMENT

### A. Polaris fails to demonstrate "good cause" under Rule 16(b)(4).

This Court's procedures expressly provide that "[t]he Court has a strong interest in keeping scheduled dates certain" and that "[c]hanges in dates are disfavored." Judge Wright's Procedures § IV. Any request to modify the Court's scheduling order "must be supported by a sufficient basis that demonstrates good cause why the change in the date is essential." *Id.* The Court's requirements are in line with the "good cause" standard under Fed. R. Civ. P. 16(b)(4), which focuses primarily on the moving party's diligence. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Accordingly, the burden is on Polaris to show the

scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension[s]." *Johnson*, 975 F.2d at 609.

Polaris cannot meet this standard. As set forth below, there are no discovery disputes requiring Court intervention, and in Sandisk's view, Polaris lacks a good-faith basis to file a motion to compel. Moreover, Sandisk has offered Polaris dates prior to the October 16, 2026 fact discovery deadline for nearly all of Polaris's requested fact depositions of Sandisk witnesses. Meyer Decl. ¶ 28.[5] There is no reason that fact discovery cannot be completed under the current scheduling order. But even if Polaris were able to show a need for an extension (it cannot), that need has been created by Polaris's own lack of diligence.

**1. There are no discovery disputes requiring Court intervention, and all depositions have been scheduled.**

Polaris states that it filed this motion to modify the scheduling order to allow "for adjudication of the [forthcoming] motion to compel." Mot. at 1; *see also id.* at 7 ("Polaris is now being forced to seek the Court's intervention to obtain the discovery to which it is entitled" and "the motion to compel necessarily will be heard shortly before the current discovery deadline"). But more than a week after Polaris's scheduling motion was filed, no motion to compel has appeared on the docket. Indeed, as set forth in detail above, Sandisk met and conferred with Polaris regarding the eight categories of purported deficiencies identified in the August 28 letter on which Polaris relied in its scheduling motion, and the parties agreed that no live disputes remained. Meyer Decl. ¶ 20. Many of the purported deficiencies were a result of a misunderstanding or lack of awareness of Sandisk's prior productions and discovery responses, and others had already been resolved as a

---

[5] As Polaris notes, it served Sandisk with a Rule 30(b)(6) notice on September 1, 2026, containing 61 topics, well beyond the 23 topics served on Western Digital prior to the Court's substitution order. Dkt. 135-19. Four of the previously scheduled fact witnesses will be designated to testify at 30(b)(6) witnesses, and the company intends to identify and offer deposition dates for any remaining topics within the next few days. Meyer Decl. ¶ 29.

result of supplemental document productions. *Id.* ¶ 22. Accordingly, Sandisk does not anticipate any discovery motions to be filed prior to the current discovery cutoff, as it is not aware of any ripe disputes raised by Polaris.[6] Without the need for court intervention on discovery disputes, there is no "good cause" for Polaris's requested extension.[7]

Additionally, Polaris has requested depositions of seven Sandisk and Western Digital employees under Fed. R. Civ. P. 30(b)(1). Sandisk has offered (and Polaris has accepted) dates for all of those depositions prior to the discovery cutoff. Meyer Decl. ¶ 28. Sandisk has also designated at least four of those witnesses to testify regarding certain topics in Polaris's Fed. R. Civ. P. 30(b)(6) notice to Sandisk.

**2. The Court's Order substituting Sandisk as the defendant in this case does not constitute good cause.**

Polaris makes a halfhearted argument that it needs additional time for discovery as a result of the Court's August 19, 2026 order substituting Sandisk as the defendant. Mot. at 6 (claiming that the order "materially alter[ed] the discovery landscape"). This argument lacks merit. As the Court well knows, Western Digital spun off the flash memory business that is relevant to this case in February 2025, resulting in Sandisk as a free-standing publicly traded company. Notwithstanding that corporate separation, the accused products, technology, and documents in this case remain the same. Sandisk's counsel (Keker, Van Nest & Peters LLP) also represents Western Digital and has been a consistent point of contact for Polaris

---

[6] Sandisk notes that Polaris sent a second L.R. 37-1 letter on September 4, 2026, but, again, the majority of the issues raised in that letter related to previously produced spreadsheets that Sandisk superseded in a later production on August 21, 2026. The parties have agreed that there are currently no live disputes regarding those issues. Meyer Decl. ¶¶ 24, 30.

[7] To the extent Polaris suggests that it does not have sufficient time to review documents produced in mid-August prior to the mid-October discovery cutoff, that complaint is not well-taken. Polaris has engaged numerous consultants in this matter, as evidenced by the declarations filed in support of their scheduling motion, and similarly has at least six attorneys who appear to be actively working on this matter. Meyer Decl. ¶ 13.

throughout the time period since the stay was lifted in this case. Meyer Decl. ¶ 1.

Moreover, the parties have extensively discussed the documents and information in Sandisk and Western Digital's respective possession following the spin-off since at least January 2026. Meyer Decl. ¶ 30; *see also* Dkt. 95 at 1. Sandisk has repeatedly told Polaris that all relevant information about the accused products is in Sandisk's possession, not Western Digital's. *Id.* ¶ 32. Notwithstanding the pending motion to substitute, however, Sandisk has actively provided documents for production to Polaris from the time of the spin-off through the order granting the motion to substitute. *Id.* ¶ 31. Indeed, following Polaris's service of a Fed. R. Civ. P. 30(b)(6) notice on Western Digital in July 2026, counsel for Sandisk and Western Digital explained that relevant information was in Sandisk's possession—not Western Digital's—and offered Sandisk witnesses for deposition. *Id.* ¶ 32.[8]

Polaris cannot point to a single delay caused by the substitution of Sandisk for Western Digital in this case, and the Court's order therefore does not constitute good cause for the requested schedule modification.

**3. To the extent Polaris does need an extension, Polaris has failed to act diligently.**

Polaris has failed to meet its burden to show that it acted diligently throughout the discovery period.

***First***, there can be no dispute that source code is uniquely important in a case involving software/firmware and alleging patent infringement, because it shows the operation of the accused products. Here, Sandisk has produced thousands of source code files related to the accused products. Meyer Decl. ¶¶ 8, 16. Polaris reviewed that source code for three days in February 2026, but did not return to review any code in March, April, or May 2026. *Id.* ¶ 13. In fact, Polaris waited more than two

[8] As further evidence that the Court's order has not created the need for an extension, Western Digital has voluntarily agreed to produce two witnesses for deposition in this matter without the need for a subpoena. Meyer Decl. ¶ 33.

months after its February review to raise any complaints to Sandisk regarding the source code production. *Id.* ¶ 15. Thereafter, Sandisk quickly investigated the issue and agreed to produce more than 6,600 source code files between mid-May and mid-June 2026. *Id.* ¶ 16. Polaris again reviewed the source code production for three days in early July, but did not return at all in August. Again, Polaris waited six weeks to raise any concerns with Sandisk. *Id.* ¶ 17. Finally, when Polaris identified additional source code folders it wanted to review on August 21, Sandisk investigated and determined that the source code folders did not pertain to the accused functionalities. Nonetheless, to avoid burdening the Court with a dispute, Sandisk produced these irrelevant folders on September 4, 2026. *Id.* ¶ 18.

For all these reasons, Polaris's complaints about source code in its motion to modify the scheduling order do not reflect diligence. Sandisk has reacted quickly every time Polaris has asked questions about source code, and in fact has agreed to produce source code that goes beyond the needs of this case. If Polaris had promptly raised these purported source deficiencies rather than waiting for weeks or months between review, these issues could have been resolved long ago.

***Second***, Polaris has not acted diligently with respect to its discovery requests. For example, Polaris served its second set of requests for production on July 31, 2026. Meyer Decl. ¶ 10. Sandisk served timely responses and objections, including by producing documents on an accelerated basis. *Id.* Polaris also served a broad set of contention interrogatories on September 1, 2026. *Id.* ¶ 11.Sandisk's objections and responses are due October 1, 2026, which is after the dates on which many of Sandisk's fact witnesses are scheduled to testify. *Id.* To the extent Polaris now claims that it does not have sufficient time to complete discovery, that is a problem of its own making.

\\

\\

\\

**B. Polaris's proposed extension would prejudice Sandisk and disrupt the Court's schedule.**

Polaris's requested modification of the Court's scheduling order would create significant pressure on the parties and the Court as the case moves from fact discovery into expert discovery and dispositive motion practice. While Polaris claims that its proposed extension is "narrowly tailored" and will not affect the trial date, it fails to disclose that the request would compress every deadline between fact discovery and the filing of summary judgment motions, creating a substantial risk that further continuances will become necessary. This is exactly the cascading disruption that this Court's procedures are designed to prevent.

***First***, Polaris's proposal would reduce the time period between service of rebuttal expert reports and the deadline to take expert depositions from four weeks to nine days. Given that there are likely to be five to six experts in this case, completing expert depositions over nine days (only seven of which are business days) will be exceedingly difficult, if not impossible. Moreover, one of Sandisk's technical experts, Dr. Tajana Rosing, is a professor at the University of California, San Diego. She will be teaching multiple classes in the winter of 2027, and the first week of classes overlaps entirely with Polaris's proposed time period for expert depositions. Meyer Decl. ¶ 26. Dr. Rosing has set time aside under the Court's current scheduling order to complete her deposition in this matter prior to the beginning of the semester, and Polaris's last-minute request would make it difficult for her to be available for deposition. *Id.*

***Second***, Polaris's proposal would reduce the time to prepare motions for summary judgment (as well as *Daubert* motions) after the expert discovery cutoff from two weeks to six days. Of those six days, only four are business days. This unrealistically quick turnaround not only would prejudice Sandisk, but it makes it more likely that a party will seek a further continuance, and will inevitably impact the quality of briefing that the Court will receive.

***Third***, Polaris's proposal requires the preparation of rebuttal expert reports over the winter holidays, when experts and counsel have preexisting personal commitments which have been carefully scheduled with the Court's current scheduling order in mind. Meyer Decl. ¶ 25.

For these reasons, Sandisk proposed a reasonable compromise that would have allowed Polaris additional time to complete fact depositions without upending the Court's schedule. Unfortunately, Polaris rejected that proposal and filed the instant motion.

## IV. CONCLUSION

For all the reasons set forth herein, Sandisk respectfully requests that the Court deny Polaris's motion and continue under the January 9, 2026 scheduling order. If the Court is inclined to grant any relief, Sandisk requests in the alternative that the Court extend the fact discovery cutoff by two weeks, to October 30, 2026, while leaving all other dates intact.

Dated: September 14, 2026 KEKER, VAN NEST & PETERS LLP

By: */s/ Erin E. Meyer*

RYAN K. WONG
ERIN E. MEYER
ERIC HANSON
KELLY S. KAUFMAN
ASEEM MEHTA
AMRUTHA DORAI

Attorneys for Defendants
Sandisk Corporation and
Sandisk Technologies, Inc.