KEKER, VAN NEST & PETERS LLP
RYAN K. WONG #267189
rwong@keker.com
ERIN E. MEYER #274244
emeyer@keker.com
ERIC HANSON #254570
ehanson@keker.com
KELLY S. KAUFMAN #328827
kkaufman@keker.com
ASEEM MEHTA #338020
amehta@keker.com
AMRUTHA DORAI #352697
adorai@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants
Sandisk Corporation and
Sandisk Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

POLARIS POWERLED TECHNOLOGIES, LLC,

Plaintiff,

v.

SANDISK CORPORATION and SANDISK TECHNOLOGIES, INC.,

Defendants.

Case No. 2:24-cv-02864-ODW-MAR

**DECLARATION OF ERIN E. MEYER IN SUPPORT OF SANDISK'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER AND EXTEND THE DISCOVERY CUTOFF AND EXPERT DEADLINES**

Dept: Courtroom 5D, 5th Floor
Judge: Hon. Otis D. Wright II

Date: October 5, 2026
Time: 1:30 p.m.

I, Erin E. Meyer, declare as follows:

1. I am a partner at Keker, Van Nest and Peters LLP. I am a member of the State Bar of California and am admitted to practice before this Court. I am attorney of record for Defendants Sandisk Corporation and Sandisk Technologies, Inc. (together, "Sandisk") in the above-captioned matter. I also represent Western Digital Corporation and Western Digital Technologies, Inc. (together, "Western Digital"), in connection with this action.

2. I have personal knowledge of the facts stated in this declaration and, if called to testify, could and would competently testify thereto. I make this declaration in support of Sandisk's Opposition to Plaintiff's Motion to Modify the Scheduling Order and Extend the Discovery Cutoff and Expert Deadlines.

3. On August 19, 2026, this Court granted Western Digital's motion to substitute Sandisk as the defendant in this matter. Dkt. 134. By agreement of the parties, Sandisk has adopted Western Digital's prior discovery responses and document productions, but will re-serve them in Sandisk's name to avoid potential jury confusion. Accordingly, references to Sandisk throughout this declaration include prior actions taken by Western Digital.

4. On October 2, 2024, Polaris served infringement contentions pursuant to the Patent Local Rules for the Northern District of California, which have been adopted in this case. I have personally reviewed the documents served by Polaris on October 2, 2024. Those infringement contentions listed numerous Western Digital and Sandisk products, but only included a single claim chart for each asserted patent, limited to infringement contentions regarding WD Black-branded solid-state drives ("SSDs").

5. On October 2, 2024, Polaris also served its first set of interrogatories and requests for production seeking information about numerous "Accused Products" that were not listed in the claim charts in Polaris's infringement

contentions. Sandisk timely responded to those requests and produced technical and financial information related to the WD Black product line, along with other documents, on November 22, 2024 and December 16, 2024.

6. On November 1, 2024, prior counsel for Sandisk (Marron E. Frith of Haynes and Boone LLP) sent a letter to Jeremiah Armstong, counsel for Polaris, explaining that Polaris had not properly accused any products other than WD Black of infringement, because the Patent Local Rules require disclosure of asserted claims and infringement contentions that include "a chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." **Exhibit 1** (quoting Patent L.R. 3-1(c)).

7. On January 13, 2025, Polaris sent Sandisk a draft of proposed amendments to its infringement contentions that included information about additional SSD products. The parties filed a joint stipulation on February 3, 2025, agreeing to formal service of both amended infringement contentions and amended invalidity contentions (Dkt. 57), which the Court approved (Dkt. 59).

8. Following the amended contentions, Sandisk collected and produced additional documents on April 30, 2025 and May 2, 2025 related to the additional accused product lines. Sandisk also prepared a source code computer for Polaris's review.

9. My law firm substituted in as counsel for Western Digital in January 2026, following the Court's order lifting the stay. Throughout the winter and spring of 2026, Sandisk diligently responded to Polaris's written discovery requests, including by (a) updating previous interrogatory responses on April 30, 2026 and August 25, 2026, (b) producing documents on April 30, May 18, June 25, July 8, 17, and 30, August 21, and September 4, and (c) engaging in written and telephonic meet-and-confers at least on January 7; February 6, 11, 13, 16, 18, 24-25, and 27; March 11, 16, and 27; April 1, 3, 6, and 7; May 1, 21, 22, 28, and 29; June 10, 12,

17, 18, and 30; July 7, 14, 27, 30, and 31; August 10, 11, 19, 21, 25, and 26; and September 1, 2, 3, 4, 8, 10, and 11, 2026.

10. Polaris served its second set of requests for production on July 31, 2026. Sandisk served timely responses and objections, including by producing documents on an accelerated basis.

11. Polaris also served a broad set of contention interrogatories on September 1, 2026. Sandisk's objections and responses are due October 1, 2026.

12. The earliest deposition of a Sandisk witness that Polaris has confirmed will take place on September 17, 2026. Polaris has not taken any depositions in this matter to date.

13. Following the order lifting the stay in this case, on February 6, 2026, Polaris sent me a notice indicating its intent to review source code at my office from February 16–20, 2026. Because my office was closed on February 16, 2026, for the Presidents' Day holiday, Polaris's consultants examined the source code on February 17–19, 2026. Despite having requested the space and related amenities to review source code on February 20, no one from Polaris appeared or notified Sandisk that review would not take place on that date.

14. During the review on February 18, 2026, Polaris notified my team that the source code computer contained certain Microsoft Word and PowerPoint files that Polaris wished to review. My team promptly installed the necessary software (OpenOffice) to enable that review on the computer.

15. Following the February 2026 review, Polaris did not raise any issues regarding purported deficiencies in the produced source code for approximately two and a half months. On April 30, 2026, Polaris demanded production of additional code.

16. Along with my team, we immediately investigated the issues Polaris raised, and Sandisk made thousands of additional source code files available for

review on May 22, June 12, and June 18, 2026. The new files totaled 6,610 source code files.

17. Polaris's consultant came to my office to inspect source code on June 22 and July 7–9, 2026.

18. Polaris did not raise any complaints about the adequacy of Sandisk's source code production between July 9 and August 21, 2026. On August 21, 2026, Polaris demanded production of several additional source code folders, which Sandisk reviewed and determined to be unrelated to the Accused Instrumentalities. Nevertheless, to avoid an unnecessary dispute, Sandisk made the requested folders available for Polaris's review on September 4, 2026.

19. After its July 2026 review, Polaris requested that Sandisk stamp and produce certain Microsoft Word and PowerPoint documents that were included on the source code computer. Sandisk agreed to do so, despite the fact that more than half of those documents—approximately 67 documents—had already been produced and the remaining documents—approximately 46—were nearly identical to other previously produced documents. These documents from the source code computer were produced to Polaris on July 17, 2026.

20. On September 8, 2026, I met and conferred with Polaris's counsel regarding Polaris's August 28, 2026 letter pursuant to Local Rule 37-1. We discussed all eight categories described in Polaris's L.R. 37-1 letter. Following that discussion, the parties confirmed that there were currently no live disputes raised in the letter that require Court intervention.

21. For example, Category 6 of Polaris's letter complained about "inadequate responses to interrogatories," but failed to acknowledge Sandisk's supplemental interrogatory responses that were previously served on August 21, 2026. During the meet-and-confer, Polaris confirmed that the issue raised in Category 6 had been resolved.

22. Category 8 of the letter complained about a purported failure to reproduce certain documents from the source code computer. I explained to Polaris that all of those documents had already been produced on July 17, 2026.

23. All of the categories raised in Polaris's August 28, 2026 letter were either the result of a misunderstanding or had already been resolved by Sandisk's productions prior to the parties' meet-and-confer.

24. Polaris sent a second letter pursuant to Local Rule 37-1 on September 4, 2026. The majority of the issues raised in that letter related to the same superseded spreadsheets that Sandisk replaced in its August 21, 2026 production and supplemental responses. And the end of that meet-and-confer, I confirmed with Polaris that there are not currently any live disputes raised in the September 4 letter that require Court intervention.

25. Polaris's proposed schedule modification would require preparation of rebuttal expert reports over the winter holidays. Sandisk's experts have informed that they have preexisting travel plans and personal commitments. Similarly, Ryan Wong and I are co-lead counsel for Sandisk in this matter. Mr. Wong and I each have preexisting travel plans and personal commitments over the winter holidays that were carefully scheduled in light of the Court's existing scheduling order.

26. One of Sandisk's technical experts in this matter is Dr. Tajana Rosing. Dr. Rosing is a Full Professor and the Fratamico Endowed Chair in the Department of Computer Science and Engineering ("CSE") and the Department of Electrical and Computer Engineering ("ECE") at the University of California, San Diego ("UCSD"). Dr. Rosing will be teaching courses at UCSD during the winter quarter, which begins on January 4, 2027. She has advised me that she will not be available for deposition during the first week of classes in light of her preexisting commitments to UCSD. Dr. Rosing has carefully planned her schedule around the Court's existing scheduling order and has made plans to be available during the

current period for expert depositions.

27. On September 3, 2026, I proposed a two-week extension of the period in which the parties could complete fact depositions, without any change to the remaining deadlines. This would provide Polaris substantially more time—eight weeks versus six weeks—to take fact depositions while allowing experts to prepare opening reports in parallel. Polaris rejected this proposal.

28. Polaris has requested depositions of seven Sandisk and Western Digital employees under Federal Rule of Civil Procedure 30(b)(1). Sandisk has offered, and Polaris has accepted, dates for all of those depositions prior to the October 16, 2026 discovery cutoff. Sandisk has also designated at least four of those witnesses to testify regarding certain topics in Polaris's Federal Rule of Civil Procedure 30(b)(6) notice to Sandisk.

29. As Polaris notes, it served Sandisk with a Rule 30(b)(6) notice on September 1, 2026, containing 61 topics, well beyond the 23 topics previously served on Western Digital. Sandisk has designated at least four of those above-mentioned fact witnesses to testify regarding certain topics in Polaris's Rule 30(b)(6) notice. Sandisk intends to identify and offer deposition dates for any remaining 30(b)(6) topics within the next several days.

30. I and other members of my team have had numerous conversations with counsel for Polaris since January 2026 regarding the documents and information in Sandisk's and Western Digital's respective possession following the spin-off.

31. Sandisk has actively provided documents for production to Polaris from the time of the spin-off through the order granting the motion to substitute.

32. Following Polaris's service of a Federal Rule of Civil Procedure 30(b)(6) notice on Western Digital in July 2026, I met and conferred with counsel for Polaris and explained that relevant information was in Sandisk's possession—

not Western Digital's—and offered Sandisk witnesses for deposition.

33. Western Digital has voluntarily agreed to produce two witnesses for deposition without the need for a subpoena.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 11th day of September, 2026 in San Francisco, CA.

ERIN E. MEYER