KRAMER LLP
Robert F. Kramer (SBN 181706)
rkramer@kramerllp.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@kramerllp.com
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (415) 419-1895

KRAMER LLP
Safraz Ishmael (*pro hac vice*)
sishmael@kramerllp.com
560 Harrison Avenue, Suite 214
Boston, MA 02118
Telephone: (212) 631-7565

KRAMER LLP
Robert Mattson (*pro hac vice*)
rmattson@kramerllp.com
Jeffrey Ahdoot (*pro hac vice*)
jahdoot@kramerllp.com
2121 Eisenhower Avenue, Suite 304
Alexandria, VA 22314
Telephone: (917) 720-0295

UMHOFER, MITCHELL & KING LLP
Margaret E. Dayton (SBN 274353)
peggy@umklaw.com
767 S. Alameda Street, Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979

*Attorneys for Plaintiff*
*Polaris PowerLED Technologies, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

POLARIS POWERLED TECHNOLOGIES, LLC,

Plaintiff,

v.

SANDISK CORPORATION, and SANDISK TECHNOLOGIES, et al.,

Defendants.

Case No. 2:24-cv-02864-ODW-MAR

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND EXTEND DISCOVERY CUTOFF AND EXPERT DEADLINES**

Discovery Cutoff: Oct. 16, 2026
Pretrial Conference: May 10, 2027
Trial: June 1, 2027

Date: October 5, 2026
Time: 1:30 p.m.
Courtroom: 5D

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. There is Good Cause for an Extension Due to SanDisk's Voluminous Last Minute Productions, Late-Scheduled Depositions, and Outstanding Discovery Disputes ..... 2

1. SanDisk's Recent Production of Documents and Source Code Exceeds its Entire Prior Production and Includes Key Information ..... 3

2. Outstanding Discovery Disputes Remain and May Require Court Intervention ..... 5

3. Given SanDisk's Substitution, the Volume of Remaining Discovery and Depositions Cannot Reasonably be Completed in the Remaining Discovery Period ..... 6

B. Polaris Has Been Diligent in Seeking Discovery ..... 7

C. SanDisk Fails to Show Prejudice Sufficient to Deny the Motion and its Proposed Compromise is Insufficient to Resolve the Timing Problems ..... 9

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Martinez v. Chaffey Community College Dist.*,
No. 5:23-cv-02441-SSS-SPx, 2026 WL 928625 (C.D. Cal. Apr. 2, 2026) ......... 7

*Romero v. Los Angeles Cty.*,
No. 2:21-cv-03972, 2023 WL 6193005 (C.D. Cal. Aug. 25, 2023) .............. 7, 10

**Rules**

Patent L.R. 3.4(a) ........................................................................................ 9

## I. INTRODUCTION

Polaris PowerLED Technologies ("Plaintiff" or "Polaris") respectfully requests that the Court grant a modest 1-month extension of the fact discovery schedule to allow its lawyers and experts to analyze and assess the massive amount of new documentation and source code that SanDisk produced in the case on the eve of the close of discovery.

This litigation has been ongoing since January 2024. Over the years, Polaris diligently and consistently pressed defendants SanDisk Corporation and Sandisk Technologies, Inc. (collectively, "SanDisk") (and predecessors Western Digital Corporation and Western Digital Technologies, Inc. (collectively, "Western Digital") for a complete and proportional production of technical documents and source code. The technical evidence that Polaris has sought is plainly relevant for proving patent infringement in this case. These are all documents that should have been produced at the inception of discovery, including under Local Patent Rule (N.D. Cal.) 3.4(a), not to mention Polaris' many document requests specifically calling for these materials and targeted at these issues.

At every step of the way, SanDisk stalled. For example, on June 19, 2026, Polaris served deposition notices on Western Digital and SanDisk requesting witnesses on the technologies at issue. The earliest date that SanDisk provided for any witness was September 17, 2026 (less than a month before discovery is scheduled to close). Western Digital never provided witnesses in response to these notices.

Then, in late August 2026, after a year of working hard trying to break though SanDisk's protracted delay producing documents and source code without court intervention, Polaris had no choice but to begin the motion to compel process and served its Local Rule 37-1 letter. SanDisk took the full 10-days under the Rule to meet and confer, and during that 10-day period (on September 4) then proceeded to produce a barrage of technology documents and source code in response to the motion to compel threat. This was in addition to 143 documents that SanDisk

produced on August 21, 2026, less than a month ago. So, while SanDisk's opposition now says that the motion to compel was not filed (Dkt. 137, at 7:17-19) – this was because SanDisk *conceded* the majority of the motion to compel issues and produced many of the missing technical documentation (some of which Polaris identified by name in its LR 37-1 letter).

This recent and late dump of relevant technical documentation in a case that is focused on the technology of the accused products is a classic attempt at trial by ambush, and the Court should not permit it. These documents should have been produced years ago, not in the two months before fact discovery closes.

Additionally, while SanDisk says that all depositions have been scheduled (*id*., at 7:11), many depositions remain unscheduled including third party depositions. SanDisk is making a brazen attempt to fit all these depositions in the weeks remaining in discovery, prejudicing Polaris and its counsel. For example, just last week SanDisk provided counsel with a 1-week notice that it will take a deposition of a named inventor (a third party) of one of the asserted patents, a witness SanDisk has been aware of for years, but only subpoenaed weeks ago. A 1-month fact discovery extension will allow the parties time to efficiently schedule these outstanding depositions.

Finally, SanDisk has not demonstrated that it will suffer undue prejudice because any prejudice here that it suffers from scheduling is of its own doing.

## II. ARGUMENT

### A. There is Good Cause for an Extension Due to SanDisk's Voluminous Last Minute Productions, Late-Scheduled Depositions, and Outstanding Discovery Disputes

SanDisk argues that there is no good cause for an extension because "there are no discovery disputes requiring Court intervention." Dkt. 137, at 7:3-5. That assertion is incorrect for several reasons, set forth below.

### 1. SanDisk's Recent Production of Documents and Source Code Exceeds its Entire Prior Production and Includes Key Information

Over the last month, SanDisk has made extremely large productions of highly relevant documents, after years of Polaris diligently writing letters and scheduling calls to seek this very information (*see* Dkt. 135, at 3-5). Much of these productions occurred just weeks ago, after Polaris served its first letter pursuant to L.R. 37-1 (the "First L.R. 37-1 Letter") notifying SanDisk that Polaris would seek Court intervention if the deficiencies were not addressed. Specifically, since August 21, 2026, SanDisk has produced over 1,352 documents, more than it has produced in the entire litigation prior to that date. *Compare* Ex. 8 and Ex. 20 *with* Ex. 21. Many, if not most, of these documents appear highly relevant to the accused technologies. Declaration of Steven Przybylski ("Przybylski Reply Decl."), ¶ 2. Polaris is actively reviewing and analyzing this substantial volume of newly produced documents. Polaris' expert estimates that his review will take several weeks. *Id*.

The need for additional time in the fact and expert discovery schedule is not based solely on the volume of these late document productions. SanDisk's recent productions include key documents that are highly relevant to Polaris' claims. For example, exhibits 22 and 23 (starting with Bates WDTECH00019730 and 22297, respectively) contain the architecture specifications and programmers reference guides for accused product families. As another example, exhibit 24 starts with Bates WDTECH00019999, which is an architecture specification for an accused product line, a document SanDisk's own earlier-produced materials reference and that Polaris specifically identified as unproduced in its July 8 letter (Ex. 12), confirming the category of withheld engineering documents existed and was producible all along. These documents are but a few examples of those directly relevant to Polaris' patent infringement claims, underscoring why Polaris must have a meaningful opportunity to analyze SanDisk's recent productions before discovery closes.

SanDisk attempts to minimize the significance of these late productions by asserting that the documents Polaris has followed up on are "similar" to documents already produced. *See* Dkt. 137, at 3:18-22. That characterization is inaccurate. For example, many of the documents initially produced by SanDisk were old versions dated prior to 2019. *See, e.g.*, ex. 18, at 4-5. Only after Polaris followed up did SanDisk recently produce updated versions covering the range of the accused products. Thus, the issue is not that Polaris is seeking duplicative versions of documents it already possesses; rather, SanDisk's recent productions have filled material gaps in its earlier production and have provided documents that Polaris could not meaningfully review or rely upon until SanDisk produced the updated versions.

Additionally, SanDisk made a substantial production of source code in the past couple of weeks, requiring significant additional time for Polaris and its experts to review and analyze. In particular, SanDisk recently produced nearly 1.5 GB of source code—approximately six times the 250 MB of source code previously produced in this action. Przybylski Reply Decl., ¶ 3. This substantial supplemental production cannot be meaningfully reviewed and analyzed instantaneously, particularly given its relevance to the accused products and technical issues in this case. Polaris therefore requires the additional requested time to meaningfully review and analyze the source code, especially given that under the Court's Protective Order in this litigation, Polaris counsel and experts can only review the source code on a source code computer that is located at SanDisk's counsel's office in San Francisco. Dkt. 61 ¶ 9(c). Polaris had previously asked for SanDisk counsel to set up a second source code computer to allow for multiple Polaris experts to review code, but this request was denied. Ex. 25.

The timing of this production is particularly problematic because SanDisk's document production delays have hindered Polaris' ability to conduct its source code review. Przybylski Reply Decl., ¶ 4. The accused products involve both hardware and software, and without a complete document production describing the hardware,

Polaris' experts cannot gain a complete understanding of the functionality of the hardware—information necessary to meaningfully evaluate the operation of the corresponding software. *Id*. SanDisk's software production has also been deficient, further impeding Polaris' technical analysis. Ex. 18.

**2. Outstanding Discovery Disputes Remain and May Require Court Intervention**

SanDisk's purported surprise that "more than a week after Polaris's scheduling motion was filed, no motion to compel has appeared on the docket" (Dkt. 137, at 7:17-19) is misplaced. SanDisk is—or should be—well aware that Local Rule 37-2 requires a multi-step process before a motion to compel may be filed. Much of SanDisk's barrage of document and source code production took place during the 10-days SanDisk waited to hold the meet and confer. As such, it would be premature for Polaris to now file such a motion before reviewing and analyzing these voluminous and late produced documents that SanDisk says are responsive to the issues that Polaris raised in the LR 37-1 letter.

And contrary to the implication of SanDisk's counsel's declaration (*see, e.g.*, Dkt. 137-1, at 5:4-6), the issues identified in Polaris's First L.R. 37-1 Letter were not already resolved when the letter was sent. Indeed, SanDisk made productions after that letter was sent and then purported that those new productions (including source code) remedied the issues raised in the First LR 37-1 Letter. But those productions SanDisk now relies upon were made only after Polaris raised the deficiencies in that letter. *See*, e.g., Ex. 26.

Furthermore, Polaris disagrees that "there were no live disputes raised in the [First L.R. 37-1 Letter] that require Court intervention." Dkt. 137, at 5:7-9. There were issues relating to SanDisk's source code production (Category 1) outstanding after the meet and confer, where the parties agreed on follow up. Ex. 27.

Nor does the fact that Polaris has not yet filed or served a motion to compel mean that no such motion will be necessary. To the contrary, these events exemplify

the parties' discovery process throughout this case: SanDisk makes a production; Polaris identifies deficiencies; SanDisk represents that it will address them; and Polaris gives SanDisk an opportunity to supplement its production before resorting to Court intervention. Following the parties' September 8, 2026 L.R. 37-1 meet and confer, for example, SanDisk represented that it would make additional source code available to address one remaining issue that was not resolved on the call. Ex. 27. Rather than immediately initiate the L.R. 37-2 process, Polaris reasonably waited to review SanDisk's promised supplemental production to determine whether it would resolve the outstanding issue. *Id.* Polaris is still reviewing that source code to determine whether SanDisk has fully addressed the outstanding deficiencies and whether Court intervention remains necessary.

The same is true with respect to Polaris' second L.R. 37-1 letter (the "Second L.R. 37-1 Letter") concerning financial discovery. The parties have made progress toward resolving the remaining issues, and Polaris has likewise refrained from initiating the L.R. 37-2 process while SanDisk works to address the outstanding concerns. Ex. 27. Polaris' continued efforts to resolve these issues without Court intervention should not be construed as an indication that no motion to compel may be necessary. Rather, they demonstrate Polaris' diligence in attempting to resolve discovery disputes before seeking the Court's intervention.

**3. Given SanDisk's Substitution, the Volume of Remaining Discovery and Depositions Cannot Reasonably be Completed in the Remaining Discovery Period**

SanDisk's substitution into the action independently warrants an extension because it allowed Polaris for the first time to serve SanDisk with a Rule 30(b)(6) notice after Western Digital previously refused to produce a witness to testify on topics identified in a similar notice served on Western Digital while SanDisk's substitution motion (Dkt. 95) was pending. Polaris has now served its Rule 30(b)(6)

notice on SanDisk, and SanDisk only on September 18, 2026 designated witnesses for most of the noticed topics. *See, e.g.*, ex. 28, at 8-11.

At the same time, and despite SanDisk's representation that "all" depositions have been scheduled (Dkt. 137, at 7:11-12), numerous other depositions remain to be scheduled. In particular, SanDisk has noticed depositions of third parties—including Intel, Microchip, and certain inventors named on the asserted patents—some of which have yet to be scheduled. *See* Ex. 29. The time crunch for the depositions is attributable to SanDisk, which served all its deposition notices in late July through early September. *See* Ex. 29. Thus, the parties face a substantial number of depositions that must be coordinated and completed within the remaining discovery period. Given the number of depositions still outstanding, the parties' limited availability, and the additional depositions necessitated by SanDisk's substitution, the extension is warranted to provide sufficient time to complete fact discovery without sacrificing the orderly development of the record.

### B. Polaris Has Been Diligent in Seeking Discovery

SanDisk alleges that the delay in completing discovery and need for an extension is due to a lack of diligence by Polaris. *See* Dkt. 137, at 9:17-10:25. Not so. SanDisk's argument discounts Polaris' repeated efforts to obtain discovery, address deficiencies in SanDisk's productions, and resolve discovery disputes without Court intervention as detailed above and in the Motion (Dkt. 135, at 3:12-5:11, 7:23-8:5). Indeed, SanDisk does not even attempt to distinguish or otherwise address the cases cited by Polaris. *See* Dkt. 135, at 5-8 (citing *Romero v. Los Angeles Cty.*, No. 2:21-cv-03972, 2023 WL 6193005, at *2 (C.D. Cal. Aug. 25, 2023) and *Martinez v. Chaffey Community College Dist.*, No. 5:23-cv-02441-SSS-SPx, 2026 WL 928625, at *1-2 (C.D. Cal. Apr. 2, 2026)).

*First*, SanDisk implies that Polaris waited until September to begin taking depositions, pointing to the fact that "the earliest" of Polaris' noticed depositions is scheduled for September 17, 2026. Dkt. 137, at 4:1-2. SanDisk of course fails to

inform the Court that Polaris noticed SanDisk and Western Digital witnesses for deposition in June 2026 (for July deposition dates), and SanDisk refused to produce a witness any earlier than September 17. *See* Ex. 30. Western Digital failed to produce a witness at all in response to those notices. Polaris served additional deposition notices on August 24, 2026. *See, e.g.*, Ex. 31.

*Second*, conceding that "source code is uniquely important in a case involving software/firmware and alleging patent infringement, because it shows the operation of the accused products," SanDisk argues that it has been quick to supplement its source code production and that Polaris "waited" to raise concerns with SanDisk. Dkt. 137, at 9:20-10:16. SanDisk's argument overlooks the fact that review and evaluating source code takes time. Polaris' experts must review, digest, and analyze the source code (in San Francisco at SanDisk's counsel office using a single source code computer) before they can meaningfully determine whether the production is complete or identify deficiencies requiring further investigation. *See* Przybylski Decl. ¶ 10 ("I believe that the deficiencies described above have significantly hampered my own review of the accused functionality, and if these documents are eventually produced by SanDisk, significant additional time will be required to review them and incorporate them in my analysis for the litigation").

Thus, the fact that Polaris did not immediately identify and raise every deficiency with SanDisk does not demonstrate a lack of diligence. To the contrary, time was necessarily required before Polaris could meaningfully assess what has been produced and determine what remained missing. And more to the point, is that SanDisk had a duty to produce this relevant source code to begin with, rather than withhold it and wait for Polaris to do the painstaking work to review and then identify the many deficiencies.

*Third*, the fact that Polaris served a second set of document requests in July 2026 (the "Second RFPs") is not evidence that Polaris failed to act diligently. Dkt. 137, at 10:17-19. The Second RFPs identified specific categories of documents that

were encompassed by Polaris' original requests but were further specified out of an abundance of caution, particularly in light of SanDisk's demonstrated discovery deficiencies. Ex. 32. Indeed, SanDisk should have produced these documents both in response to Polaris' original requests, *and* pursuant to Northern District of California Patent Local Rule 3.4(a).

Nor does Polaris' September 1, 2026 service of a second set of interrogatories demonstrate a lack of diligence. As SanDisk itself acknowledges (Dkt. 137, at 10:20-21), those are primarily contention interrogatories, which are appropriately served later in discovery after the parties have had an opportunity to develop the factual record. Ex. 33. Polaris' service of these interrogatories therefore reflects the ordinary progression of discovery, not delay. SanDisk itself served such contention interrogatories on September 15, 2026. Ex. 34.

### C. SanDisk Fails to Show Prejudice Sufficient to Deny the Motion and its Proposed Compromise is Insufficient to Resolve the Timing Problems

SanDisk argues that scheduling expert depositions will be "difficult, if not impossible." Dkt. 137, at 11:13-15. Speculative scheduling difficulties are not demonstrated prejudice, and even if they were, this is a problem of SanDisk's own making. Moreover, if difficulties arise when the time comes to schedule expert depositions, the parties can seek an appropriate solution, including, if necessary, seeking leave to take an expert deposition outside of the expert discovery period. And SanDisk cites no authority suggesting that the availability of a single expert, standing alone, establishes prejudice sufficient to deny an otherwise warranted extension.

Furthermore, SanDisk's asserted prejudice is largely speculative. SanDisk does not identify any concrete prejudice that would result from the requested extension; instead, it posits that the compressed schedule could make future continuances "more likely" and could "impact the quality of briefing." *Id.*, at 11:25-28. Speculation that a future continuance might become necessary does not

demonstrate that the narrowly tailored extension requested here will prejudice SanDisk or disrupt the Court's schedule.

Finally, SanDisk's proposed compromise of a two-week extension to complete depositions (*id.* at 5:23-6:17) does not adequately address the circumstances necessitating an extension. The proposal focuses solely on the time needed to complete depositions, but does not account for the potential additional document and source code productions, the substantial volume of documents and source code that Polaris must review and analyze, or the outstanding discovery disputes and potential motions to compel—including SanDisk's own. A longer extension is therefore necessary to allow Polaris a meaningful opportunity to complete discovery in light of these circumstances.

## III. CONCLUSION

In sum, the record establishes ample good cause for an extension of the discovery deadline. SanDisk's substantial last-minute productions, including its recent production of a large volume of documents and nearly 1.5 GB of source code, the parties' numerous outstanding depositions, the discovery disputes that remain unresolved, and SanDisk's recent substitution into the action have all materially compressed the time available to complete discovery. Despite Polaris' diligence in pursuing discovery and attempting to resolve disputes without Court intervention, these circumstances have made it impossible to complete the necessary discovery within the existing schedule. "[T]he pretrial schedule [] cannot reasonably [] be met despite the diligence of" Polaris. *Romero*, 2023 WL 6193005, at *2. For the reasons above and in the Motion, the Court should grant the requested extension.

Dated: September 21, 2026

Respectfully submitted

/s/ Robert F. Kramer
Robert F. Kramer (SBN 181706)
rkramer@kramerllp.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@kramerllp.com
KRAMER LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (415) 419-1895

Safraz Ishmael (*pro hac vice*)
sishmael@kramerllp.com
560 Harrison Avenue, Suite 214
KRAMER LLP
Boston, MA 02118
Telephone: (212) 631-7565

Robert Mattson (*pro hac vice*)
rmattson@kramerllp.com
Jeffrey Ahdoot (*pro hac vice*)
jahdoot@kramerllp.com
KRAMER LLP
2121 Eisenhower Avenue, Suite 304
Alexandria, VA 22314
Telephone: (917) 720-0295

Nicole Glauser (*pro hac vice* forthcoming)
nglauser@kramerllp.com
500 W. 2nd Street, Suite 1900
KRAMER LLP
Austin, TX 78701
Telephone: (212) 363-1492

Margaret E. Dayton (SBN 274353)
peggy@umklaw.com
UMHOFER, MITCHELL & KING LLP
767 S. Alameda Street, Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979

*Attorneys for Plaintiff Polaris PowerLED Technologies, LLC*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

The undersigned certifies that this submission __ does not use **X** uses generative artificial intelligence. If generative artificial intelligence was used, following drafting, I reviewed, revised, and supplemented all portions of the brief, including those that were informed by the use of Artificial Intelligence or based on prior templates. I independently verified the factual and legal accuracy of the content and confirmed that all arguments and authorities were appropriate to the issues presented.

*/s/ Robert F. Kramer*
Robert F. Kramer

# CERTIFICATE OF SERVICE

I, Robert F. Kramer, hereby declare:

I am over the age of eighteen years and not a party to this action. My business address is 1133 Broadway, Suite 1510, New York, NY 10010.

On September 21, 2026, I caused the foregoing document described as:

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND EXTEND DISCOVERY CUTOFF AND EXPERT DEADLINES**

to be served upon the following, at the addresses stated below, via email:

**KEKER, VAN NEST & PETERS LLP**
RYAN K. WONG #267189
rwong@keker.com
ERIN E. MEYER #274244
emeyer@keker.com
ERIC HANSON #254570
ehanson@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Defendants SanDisk Corporation and SanDisk Technologies, Inc.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 21, 2026.

*/s/ Robert F. Kramer*
Robert F. Kramer