KEKER, VAN NEST & PETERS LLP
RYAN K. WONG #267189
rwong@keker.com
ERIN E. MEYER #274244
emeyer@keker.com
ERIC B. HANSON #254570
ehanson@keker.com
KELLY S. KAUFMAN #328827
kkaufman@keker.com
ASEEM MEHTA #338020
amehta@keker.com
AMRUTHA DORAI #352697
adorai@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants
Sandisk Corporation and
Sandisk Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

POLARIS POWERLED TECHNOLOGIES, LLC,

Plaintiff,

v.

SANDISK CORPORATION and SANDISK TECHNOLOGIES, INC.,

Defendants.

Case No. 2:24-cv-02864-ODW-MAR

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO MODIFY THE SCHEDULING ORDER**

Dept: Courtroom 5D, 5th Floor
Judge: Hon. Otis D. Wright II

Date Filed: April 9, 2024

Trial Date: June 15, 2027

Defendants Sandisk Corporation and Sandisk Technologies, Inc. ("Sandisk") respectfully oppose Plaintiff Polaris PowerLED Technologies, LLC's ("Polaris") *Ex Parte* Application to Modify the Scheduling Order, Dkt. 176 ("App."). Unredacted copies of Polaris's pleadings were served on Sandisk at 8:09 P.M. PST on Monday, November 9, 2026. This opposition has been timely filed under the Court's 24-hour response deadline.

## I. <u>INTRODUCTION</u>

This dispute is the result of Polaris's failure to diligently seek information and documents from FADU Technology, Inc. ("FADU"), one of several third-party memory-controller manufacturers that Polaris subpoenaed for documents and testimony nearly *six months ago*. After serving the FADU subpoena on May 26, 2026, Polaris spent four months negotiating with FADU over that subpoena, which resulted in FADU producing technical documents on September 16, 2026. If Polaris believed that FADU's production was inadequate, it should have either negotiated with FADU for more information, or promptly sought relief from the Court to compel production of the additional FADU materials it seeks.

Polaris did neither. Consequently, Polaris has now filed this emergency *ex parte* application four days before the November 13 fact-discovery cutoff, asking this Court to extend fact discovery, authorize an additional deposition of Sandisk regarding FADU materials, and permit supplemental expert reports related to FADU's proprietary information. App. at 2. But "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have," and Polaris is not entitled to the "extraordinary relief" it seeks. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 493 (C.D. Cal. 1995); Judge Wright's Procedures § VII(D).

Polaris's moving papers confirm that it was not diligent, there is no good cause to modify the scheduling order, and there is no emergency here (other than one of Polaris's own making). Simply put, Polaris had almost half a year to compel

compliance with its subpoena to FADU, obtain the specific third-party documents it seeks, and have FADU explain and authenticate those materials in a deposition. It was not diligent in seeking that relief, and inexplicably waited until November 5, 2026, to assert for the first time that a document from ***FADU's*** production may be incomplete. That deficiency should have been raised directly with FADU—or the Court—months ago.

As for FADU materials that Sandisk may possess, Sandisk conducted a reasonable search and has produced to Polaris ***all*** responsive and relevant FADU materials within its possession, custody, or control. That production includes documents and source code that appear relevant to the specific technologies in dispute. And Sandisk produced those FADU materials to Polaris under an agreed-upon timeline. In sum, Sandisk is not withholding any responsive and relevant FADU information from discovery, and Polaris has never identified any such information to Sandisk. And while Polaris argues that Sandisk [redacted] from FADU, that is false. Sandisk [redacted] that FADU hand over its confidential, third-party materials to Sandisk for production in a U.S. litigation.

Polaris has had months to seek Court intervention on all of the alleged deficiencies in FADU's subpoena responses, but it failed to exercise the diligence necessary to justify its *ex parte* request to modify the scheduling order. *See Mission Power*, 883 F. Supp. at 493; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). For these reasons, Polaris's application should be denied.

## II. <u>RELEVANT BACKGROUND</u>

### A. Polaris subpoenaed FADU and FADU produced responsive records.

On May 26, 2026, Polaris served Sandisk with notice of a Rule 45 subpoena to FADU Technology, Inc. seeking documents and testimony. Declaration of Ryan Wong ("Wong Decl."), Ex. A at 2–4. Polaris's subpoena requested, among other things, documents related to the structure, function, operation, and technical

implementation of FADU controllers used in Sandisk's products, and source code from FADU. App. at 6. On September 16, 2026, FADU issued a letter to Polaris, noting FADU's production of documents in response to the subpoena "based on the scope discussed and clarified between the parties [*i.e.*, FADU and Polaris]." Wong Decl., Ex. B at 1. Sandisk did not participate in any negotiations between FADU and Polaris related to the FADU subpoena, and therefore does not know how the "scope" of the FADU subpoena was "clarified." Wong Decl. ¶ 6. As Polaris's *ex parte* application and the docket of these proceedings confirm, Polaris ***never*** moved to compel FADU to produce any further information under the subpoena. And Polaris never scheduled a deposition of a FADU witness under the subpoena. *Id.* ¶ 7.

**B. Sandisk produced all responsive FADU information in its control within the Parties' agreed-upon timeline.**

Polaris served discovery requests seeking responsive information within Sandisk's possession, custody, or control related to FADU controllers that may be used in the accused products. App. at 6; Dkt. 176-4. Polaris first indicated its interest in FADU to Sandisk on May 21, 2026, as [redacted] a letter about Sandisk's overall document production. Dkt. 176-2 at 2. Sandisk met and conferred with Polaris about the letter, followed up to explain that Sandisk did "not agree that all of the 'code names'" referenced in the "letter are relevant to this litigation," and that Sandisk would produce responsive and relevant non-privileged documents as they are identified. Wong Decl., Ex. C at 1.

On September 10, 2026, Polaris sent a letter to Sandisk seeking to enlist Sandisk's help to obtain proprietary FADU materials from FADU, covering what Polaris characterized as being the "same information" that Polaris had already requested from FADU through its subpoena. *See* Dkt. 176-4. In that letter, [redacted]

[redacted] *Id.* [redacted]. Dkt. 176-7 at 5. But in a good-faith effort to facilitate discovery, Sandisk nevertheless agreed to reach out to FADU regarding Polaris's subpoena. *See* Dkt. 176-5.

Further, on October 5, 2026, Sandisk confirmed in writing that it was "diligently searching for any remaining responsive technical documents" related to FADU controllers over which Sandisk had legal authority (*i.e.*, possession, custody, or control), and would produce them at least one week before the deposition of Mr. Sivasankaran, the Sandisk corporate witness designated to address questions within the company's knowledge related to third-party controllers. Dkt. 176-7 at 14. The parties then met and conferred over this proposal, and on October 9, Polaris memorialized the parties' agreement that Sandisk would continue its investigation of and produce responsive FADU documents in its possession, including "relevant technical specifications, system architecture and source code," as early as Sandisk could do so "prior to the deposition of Mr. Sivasankaran." *Id.* at 9.

Sandisk did exactly what it committed to do. After a reasonable and diligent search of the proprietary FADU materials that it had legal authority to produce, Sandisk produced ***all*** responsive and relevant technical documents covering system architecture, ASIC architecture, firmware architecture, and controller modeling on October 23, 2026. Dkt. 176-7 at 8; App. at 7. Moreover, as required by Sandisk's supply agreement with FADU, Sandisk provided FADU with notice of its intent to make available for inspection relevant proprietary FADU source code within Sandisk's possession, custody, or control. *Id.* On the evening of November 3, FADU approved production of the relevant source code, and Sandisk made the code—[redacted]—available for Polaris's inspection beginning on November 5, 2026, which was one week before Mr. Sivasankaran's deposition. *Id.* at 6.

Sandisk further confirmed to Polaris that it had produced all responsive FADU-proprietary documents within its control and "is not withholding any Fadu

technical documents within Sandisk's control that Sandisk identified as responsive to Polaris's RFPs." Dkt. 176-7 at 5. As Polaris's own correspondence shows, Polaris has ***never identified*** any FADU document missing from Sandisk's production. *Id.* At most, on November 5, 2026, Polaris, for the first time, referenced a ***single document in FADU's production in response to Polaris's subpoena*** that it asserted was incomplete. *Id.* In response, Sandisk explained to Polaris that Polaris had received FADU's document production months ago, and that Polaris had been and remained free to follow up with FADU about any perceived deficiencies in FADU's production. *Id.* It is still unclear whether Polaris ever raised the alleged deficiency with FADU or asked FADU to replace the incomplete document.

For its part, Sandisk has continued to reasonably accommodate Polaris's requests regarding FADU-related discovery. For example, Sandisk offered to overnight FADU source-code printouts identified by Polaris and to hold open Mr. Sivasankaran's deposition to address additional questions related to FADU source code at a later date. Dkt. 176-7 at 2-3. Polaris declined Sandisk's offers. *Id.* at 2.

## III. LEGAL STANDARDS

*Ex parte* relief requires a showing that the moving party's cause will be irreparably prejudiced if the underlying motion is heard on regular notice, and that the moving party is without fault in creating the crisis. *Mission Power*, 883 F. Supp. at 492. "In this District, ex parte applications are solely for extraordinary relief and are rarely justified." *POP MART Americas Inc. v. 7-Eleven, Inc.*, 809 F. Supp. 3d 980, 988 (C.D. Cal. 2025).

A scheduling order may be modified "only for good cause." Fed. R. Civ. P. 16(b)(4). The good-cause inquiry "primarily considers the diligence of the party seeking the amendment," and "[i]f that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609; *see also* App. at 8.

Polaris satisfies neither standard.

## IV. ARGUMENT

There is no emergency here, and any time pressure is of Polaris's own making. Polaris was not diligent in pursuing discovery from FADU, which is fatal to its requests to modify the scheduling order. And after a diligent and reasonable search, Sandisk has produced all responsive and relevant FADU information within its control, on the agreed timeline. Therefore, nothing about Sandisk's production supplies "good cause" to justify the relief Polaris seeks.

Because Polaris has not been diligent, good cause has not been shown, and the additional requested deposition and supplemental expert reports are prejudicial and unwarranted, Sandisk respectfully requests that Polaris's *ex parte* application be denied.

**A. There is no emergency and Polaris is to blame for any urgency.**

*Ex parte* relief requires Polaris to show both that it will be irreparably prejudiced and that it is "without fault in creating the crisis that requires ex parte relief." *Mission Power*, 883 F. Supp. at 492. Polaris can show neither. Stripped of its rhetoric, the Application is a complaint about a third party's subpoena response. Polaris grumbles that FADU "broadly objected" to its subpoena and "produced only two documents." App. at 6. But the only concrete deficiency Polaris has ever identified pertains to a document from FADU's production that Polaris speculated was incomplete. Dkt. 176-7 at 5. And Polaris's Application makes it clear it seeks ***emergency relief now*** in order to have more time to pursue the very documents it sought in the subpoena it issued to FADU more than five months ago. App. at 9.

The facts confirm that the "crisis" underlying Polaris's Application was avoidable. Polaris served notice of its subpoena on May 26, 2026. Wong Decl., Ex. A at 2–4. And FADU produced responsive records on September 16, 2026, "based on the scope discussed and clarified between the parties," *i.e.*, FADU and Polaris. Wong Decl., Ex. B at 1. Polaris then waited seven weeks, until November 5, to raise any concern about that production, and raised it with Sandisk rather than FADU. Dkt. 176-7 at 5. Polaris never moved to compel FADU to produce

additional documents, and it never scheduled a FADU deposition. Wong Decl. ¶ 7. The Federal Rules supplied the remedy, *see* Fed. R. Civ. P. 45(d)(2)(B)(i), and Polaris chose not to use it.

Nor can Polaris manufacture urgency from its own correspondence with Sandisk. Polaris itself insisted that its request for FADU documents from Sandisk "applies to Polaris's requests for documents to SanDisk that are related to FADU, ***not Polaris's subpoena to FADU***." Dkt. 176-6 at 3. Sandisk has already produced all responsive and relevant FADU documents and source code within its control on the timeline agreed upon by the parties. Dkt. 176-7 at 8. And, when Sandisk offered to deliver printouts of any identified FADU code overnight and, if needed, to hold open a reasonable portion of Mr. Sivasankaran's deposition for FADU source-code questions, Polaris refused that proposed compromise. *Id.* at 2. A party that rejects a ready solution to the problem it describes is not facing an emergency. *See, e.g., Mission Power*, 883 F. Supp. at 493.

**B. Polaris was not diligent and cannot blame its conduct on Sandisk.**

To justify a request to modify a scheduling order, Rule 16(b)(4)'s good-cause inquiry focuses on the diligence of the party seeking relief, and "[i]f that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. Polaris claims it pursued FADU discovery "for over five months." App. at 9. Its own record shows otherwise. Polaris provided notice of its deposition and document subpoena to FADU on May 26, 2026, and it sought from FADU the very information it now asserts it lacks: information concerning the structure, function, operation, and technical implementation of the FADU controllers, and FADU source code. Wong Decl., Ex. A; App. at 6, 9. FADU produced responsive documents, within the scope of an agreement that Polaris negotiated with FADU. Wong Decl., Ex. B at 1. Polaris ***did nothing further*** to enforce its subpoena—no motion to compel, no deposition. Wong Decl. ¶ 7. When Polaris raised an alleged gap in FADU's production, for the first time, on November 5, with Sandisk, Sandisk reminded

Polaris that it "has been and remains free to follow up with Fadu." Dkt. 176-7 at 5. Polaris never said whether it had—and its Application is still silent on this question. *Id*.

Polaris cannot shift its lack of diligence onto Sandisk. Sandisk discharged its discovery duties and did exactly what it agreed to do. After "a reasonable and diligent search" of the proprietary FADU materials that Sandisk is authorized to access, Sandisk produced all responsive and relevant technical documents covering system architecture, ASIC architecture, firmware architecture, and controller modeling on October 23, 2026. Dkt. 176-7 at 8; App. at 7. And, [redacted], Sandisk made the relevant FADU source code files (which it was authorized to access) available for inspection on November 5, 2026, just as it had agreed to do. Dkt. 176-7 at 6, 9 (committing to producing FADU source code one week before Mr. Sivasankaran's deposition). In short, Sandisk is "not withholding any Fadu technical documents within Sandisk's control that Sandisk identified as responsive to Polaris's RFPs." *Id*. at 5.

Polaris's Application nevertheless asserts that "there are still documents missing." App. at 2. But Polaris has never identified a single responsive document within Sandisk's control that Sandisk has withheld. *See, e.g., Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."). Polaris's request for time to "identify any deficiencies," App. at 4, confirms the point: Rule 16(b)(4) does not permit extending discovery so that a party can look for a dispute it has not yet found.

The authorities on which Polaris relies confirm that it is not entitled to the relief it seeks. In *Romero v. Los Angeles County*, counsel "persistently followed up" to obtain responses by the close of discovery. 2023 WL 6193005, at *2 (C.D. Cal. Aug. 25, 2023). Here, there is no record that Polaris ever followed up with FADU to obtain the records it asserts are missing from FADU's production. In *Martinez v. Chaffey Community College Dist.*, the moving party relied on a representation that

supplemental responses would be served. 2026 WL 928625, at *1-2 (C.D. Cal. Apr. 2, 2026). Here, Sandisk made exactly the production it promised within the timeline agreed upon by the parties. And in *Noyes v. Kelly Servs.*, the defendant repeatedly delayed a timely noticed deposition and the deponent failed to appear. 488 F.3d 1163, 1174 (9th Cir. 2007). Here, Polaris never noticed a deposition of a FADU witness. And the deposition of Sandisk's designee, Mr. Sivasankaran, is proceeding as scheduled—and Sandisk even offered accommodations to facilitate Polaris's conduct of the deposition, which Polaris refused.

Furthermore, Polaris's unsubstantiated theory—raised only in passing in its Application—[redacted] does not change the analysis. App. at 6. Under Rule 34, "control" means "the legal right to obtain documents upon demand," and the party seeking production bears the burden of proving it. *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Polaris does not even attempt to meet its burden, declining to argue under this standard or produce any evidence in support. *Cf.* App. [redacted]. *See* Dkt. 176-7 at 2, 5, 14. And Sandisk has confirmed that it completed a diligent search for responsive records among the FADU documents and source code it was authorized to review, produced all such records that are relevant, and is not withholding any responsive and relevant FADU information. *Id.* at 5, 6, 8. An extension of the case deadlines would change nothing: Sandisk has already produced all responsive and relevant FADU documents within its control.

Good cause does ***not*** exist to extend the case schedule because Polaris failed to diligently pursue the FADU information it claims is missing.

**C. The additional deposition and supplemental expert reports are unwarranted and would prejudice Sandisk.**

Polaris's lack of diligence is dispositive, and its application to modify the case schedule should be denied. *Thompson v. BMW of N. Am., LLC*, 334 F.R.D. 230, 233 (C.D. Cal. 2020). Additionally, there is no basis for Polaris's request to depose an additional Sandisk witness, App. at 9 n.1, especially because Sandisk already offered to hold Mr. Sivasankaran's deposition open for FADU source-code questions—an offer Polaris rejected. The supplemental reports Polaris requests would also prejudice Sandisk because Polaris does ***not*** seek to move the expert discovery cutoff, App. at 11, so any additional expert reports would unreasonably compress the timelines for Sandisk's responsive reports into the holiday period in which rebuttal reports are already due.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Polaris's *ex parte* application in its entirety.

Dated:November 10, 2026 KEKER, VAN NEST & PETERS LLP

By: */s/ Aseem Mehta*
RYAN K. WONG
ERIN E. MEYER
ERIC B. HANSON
KELLY S. KAUFMAN
ASEEM MEHTA
AMRUTHA DORAI

Attorneys for Defendants
Sandisk Corporation and
Sandisk Technologies, Inc.

## ARTIFICIAL INTELLIGENCE CERTIFICATION

The undersigned certifies that this submission __ does not use X uses generative artificial intelligence.

*/s/ Aseem Mehta*
Aseem Mehta

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,105 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Aseem Mehta*
Aseem Mehta