# EXHIBIT A

KRAMER LLP
Robert F. Kramer (SBN 181706)
rkramer@kramerllp.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@kramerllp.com
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (415) 419-1895

Safraz Ishmael (*pro hac vice*)
sishmael@kramerllp.com
131 Dartmouth Street, 3rd Floor
Boston, MA 02116
Telephone: (212) 631-7565

Robert Mattson
rmattson@kramerllp.com
Jeffrey Ahdoot (pro hac vice)
jahdoot@kramerllp.com
2121 Eisenhower Avenue, Suite 304
Alexandria, VA 22314
Telephone: (917) 720-0295

Nicole Glauser (*pro hac vice* forthcoming)
nglauser@kramerllp.com
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (212) 363-1492

*Attorneys for Plaintiff*
*Polaris PowerLED Technologies, LLC*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC,<br>Plaintiff,<br>v.<br>WESTERN DIGITAL CORPORATION, and WESTERN DIGITAL TECHNOLOGIES, INC.,<br>Defendants. | Case No. 2:24-cv-02864-ODW-MAR<br><br>**PLAINTIFF'S NOTICE OF SUBPOENA TO FADU TECHNOLOGY, INC.** |

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiff Polaris PowerLED Technologies, LLC ("Plaintiff"), by and through its counsel, will serve the attached subpoenas seeking documents and testimony from non-party FADU Technology, Inc.

The subpoena requests the production of documents, information, or objects described in Attachment A, to be produced at the time and location specified in the subpoena, or, alternatively, at a mutually agreed time and location. The subpoena further requests testimony, to be presented at a mutually agreed time at the location specified in the subpoena, or, alternatively, at a mutually agreed time and location. A copy of the Protective Order is attached as Exhibit 1.

If you have any questions, please contact Jeffrey Ahdoot; Kramer LLP; 2121 Eisenhower Avenue, Suite 304; Alexandria, Virginia 22314; 917-720-0295; jahdoot@kramerllp.com.

Respectfully submitted,

Dated: May 26, 2026 By: */s/ Jeffrey D. Ahdoot*

Robert F. Kramer (SBN 181706)
rkramer@kramerllp.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@kramerllp.com
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (415) 419-1895

Safraz Ishmael (*pro hac vice*)
sishmael@kramerllp.com
131 Dartmouth Street, 3rd Floor
Boston, MA 02116
Telephone: (212) 631-7565

Robert Mattson (*pro hac vice*)
rmattson@kramerllp.com
Jeffrey Ahdoot (*pro hac vice*)
jahdoot@kramerllp.com
2121 Eisenhower Avenue, Suite 304
Alexandria, VA 22314
Telephone: (917) 720-0295

Nicole Glauser (*pro hac vice* forthcoming)
nglauser@kramerllp.com
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (212) 363-1492

Margaret E. Dayton (SBN 274353)
peggy@umklaw.com
UMHOFER, MITCHELL & KING LLP
767 S. Alameda Street, Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979

Attorneys for Plaintiff
POLARIS POWERLED
TECHNOLOGIES, LLC

## CERTIFICATE OF SERVICE

I, Jeffrey D. Ahdoot, hereby declare:

I am over the age of eighteen years and not a party to this action. My business address is 2121 Eisenhower Avenue, Suite 304, Alexandria, VA 22314.

On May 26, 2026, I caused the foregoing document described as:

- **PLAINTIFF'S NOTICE OF SUBPOENA TO FADU TECHNOLOGY, INC.**

to be served upon the following, at the addresses stated below, via email:

**KEKER, VAN NEST & PETERS LLP**
RYAN K. WONG #267189
rwong@keker.com
ERIN E. MEYER #274244
emeyer@keker.com
ERIC HANSON #254570
ehanson@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Defendants Western Digital Corporation and Western Digital Technologies, Inc.*

*Attorneys for Defendants Western Digital Corporation and Western Digital Technologies, Inc.,*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 26, 2026

*/s/ Jeffrey D. Ahdoot*
Jeffrey D. Ahdoot

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Polaris PowerLED Technologies, LLC<br>*Plaintiff*<br>v.<br>Western Digital Corporation et al.<br>*Defendant* | ) | Civil Action No. 2:24-cv-02864-ODW-MAR |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: FADU Technology Inc., Registerd Agent: DELAWARE BUSINESS INCORPORATIONS, INC., 3422 Old Capitol Trail, Suite 700, Wilimington, DE 19808

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Attachment B

| Place: Kramer LLP<br>303 Twin Dolphin Dr., Suite 600<br>Redwood City, CA 94065 | Date and Time:<br>06/30/2026 10:00 am |
|---|---|

The deposition will be recorded by this method: stenography and videography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Attachment A - Due June 22, 2026 to 303 Twin Dolphin Dr., Suite 600, Redwood City, CA 94065 or to jahdoot@kramerllp.com and Kramer-LLP-Polaris-WesternDigital@kramerllp.com

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/22/2026

*CLERK OF COURT*

OR

/s/ Jeffrey D. Ahdoot

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Polaris PowerLED Technologies, LLC, who issues or requests this subpoena, are:

Jeffrey Ahdoot, jahdoot@kramerllp.com; Kramer LLP, 2121 Eisenhower Avenue, Suite 304, Alexandria, VA 22314, (917) 720-0295

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:24-cv-02864-ODW-MAR

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

❐ I served the subpoena by delivering a copy to the named individual as follows: ______________________
______________________ on *(date)* ______________ ; or

❐ I returned the subpoena unexecuted because: ______________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

The following definitions shall apply to the requests that follow:

1. The terms "FADU" or "you" or "your" mean FADU Technology, Inc., and/or FADU Inc., including, without limitation, all corporate and/or manufacturing locations, predecessors, all parent companies, partners, wholly or partially owned subsidiaries, divisions, past or present affiliated corporations, and each of their past and present employees, agents, officers, directors, representatives, consultants, accountants, attorneys, or entities acting in joint venture or partnership relationships with FADU.

2. The term "Western Digital/SanDisk" and "Defendant" mean individually or collectively, Western Digital Corporation, Western Digital Technologies, Inc., Sandisk Corporation; Sandisk Technologies, Inc.; SanDisk LLC; SanDisk (Cayman) Limited; SanDisk Storage Malaysia Sdn. Bhd.; SanDisk Semiconductor (Shanghai) Co., Ltd.; SanDisk (Ireland) Limited; SanDisk International Limited; SanDisk China Limited; SanDisk Trading Holdings Limited; SanDisk Manufacturing Unlimited Company; SanDisk Bermuda Limited, and any other persons or agents acting or purporting to act on their behalf as well as any of its current and past officers, directors, agents, employees, consultants, attorneys, and others acting or purporting to act on behalf of Defendant, including all affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors, successors in interest, and other legal entities, whether foreign or domestic, that are owned or controlled by Defendant and all predecessors and successors in interest to such entities.

3. The terms "Polaris" and "Plaintiff" mean Polaris PowerLED Technologies, LLC.

4. The term "this Action" means the above-captioned proceeding in the Central District of California, i.e., Case No. 2:24-cv-02864-ODW-MAR.

5. " '968 Patent" means U.S. Patent No. 8,554,968, issued Oct. 8, 2013, and titled "Interrupt Technique For A Nonvolatile Memory Controller."

6. " '346 Patent" means U.S. Patent No. 8,601,346, issued Dec. 3, 2013, and titled "System And Method For Generating Parity Data In A Nonvolatile Memory Controller By Using A Distributed Processing Technique."

7. " '085 Patent" means U.S. Patent No. 9,183,085, issued Nov. 10, 2015, and titled "Systems And Methods For Adaptively Selecting From Among A Plurality Of Error Correction Coding Schemes In A Flash Drive For Robustness And Low Latency."

8. The term "Asserted Patents" means the '968 Patent, the '346 Patent, and the '085 Patent, and includes each patent individually and all combinations and sub-combinations of the patents collectively.

9. The term "Product" means hardware, Software, Software Documentation, intellectual property, including such items offered for sale, sold, or under development, and services such as testing, support, or performance of a process or method.

10. The term "Accused Western Digital/SanDisk SSD Products" means all Western Digital and SanDisk solid-state drive ("SSD") products made, offered for sale, sold, imported, or used in the United States from 2018 through the date of trial in this case (presently set for June 2027), and thereafter through the date of expiration of the Asserted Patents, including without limitation, WD Black-branded SSDs, WD Red-branded SSDs, WD Blue-branded SSDs, WD Green-branded SSDs, WD Gold-branded SSDs, WD Ultrastar SSDs, WD PC-branded SSDs, WD CL-branded SSDs, WD Industrial-branded SSDs, WD My Passport SSDs, SanDisk-branded

Portable SSDs, SanDisk-branded Extreme M.2 NVMe PCIe Gen 4.0 Internal SSDs, and SanDisk-branded SSD PLUS M.2 NVMe PCIe Gen 3.0 Internal SSDs, as well as any other Western Digital and/or SanDisk branded SSD products that comprise analogous structures and functions and/or that support NVMe.

11. The term "FADU SSD-Related Product" means Products designed, manufactured, procured, provided, developed, or imported by FADU, compatible with use in or with solid-state disks, including controllers, ASICs, PCBs, PMICs, IC Load Switches, NANDs, and reference designs, and also including Products providing Interrupt Generation Functionality, ECC Generation Functionality, and/or ECC Selection Functionality.

12. The term "Provided to" means provided to, made available to, developed for, or performed on behalf of.

13. The term "Interrupt Generation Functionality" means functionality of a solid-state disk that is intended to, designed to, or actually does trigger interrupts in a host processor that interfaces with the solid-state disk.

14. The term "ECC Generation Functionality" means functionality of a solid-state disk that receives and/or processes commands related to generating error correction coding ("ECC") information or functionality that generates ECC data, including parity data within the solid-state disk.

15. The term "ECC Selection Functionality" means functionality of a solid-state disk that selects and/or applies ECC approaches used within the solid-state disk, wherein such ECC approaches include the application of various ECC types (e.g., LDPC vs. BCH), various coding strategies (e.g., RAID in addition to basic parity), and various ECC computational approaches (e.g., hard decoding, soft decoding, and/or iterative decoding), such functionality including the

determination of bit error rates, the implementation of the available ECC approaches, and the ability to vary characteristics of the selected ECC approaches as necessary.

16. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the discovery request inclusive rather than exclusive.

17. The terms "any" and/or "each" shall be construed to include and encompass "all."

18. The term "communication" means every manner or method of disclosure or transfer or exchange of information, whether orally or by document, and whether face-to-face, by telephone, mail, electronic mail, personal delivery, facsimile, or otherwise.

19. The terms "document" or "documents" are used in the broadest possible sense as provided by the Federal Rules of Civil Procedure.

20. The terms "person" or "persons" mean any natural person or legal entity, or business entity, including, but not limited to, any corporation, partnership, unincorporated association, joint venture, sole proprietorship, government agency, or any and/or all other organization or group of individuals.

21. The terms "entity" or "entities" include natural persons, proprietorships, partnerships, firms, private corporations, public corporations, municipal corporations, governments (including foreign national governments, the government of the United States or any state or local government), all departments and agencies thereof, and any governmental agencies of any country, political subdivisions, groups, associations, or organizations.

22. The terms "thing" or "things" means any tangible object other than a document as defined herein, and includes objects of every kind and nature.

23. Use of the singular is also taken to include the plural, and vice versa.

24. Use of the word "the" shall not be construed as limiting the scope of any request.

25. “Source Code” means human-readable programming-language text that defines Software, firmware, or electronic hardware descriptions. Source Code files include, but are not limited to, files containing source in “Java,” “C,” “C++,” assembler, VHDL, Verilog, and RISC processor programming languages. Source Code files further include “.include files,” “make” files, link files, “Extensible Markup Language (XML)” files, and other human-readable text files used in the generation and/or building of Software directly executed on a processor, controller, micro-controller, or DSP.

26. “Software” means all forms of code, including Source Code, object code, firmware, compiled code, byte code, interpreted code, any form of code stored in any storage medium (for example, ROM or Flash RAM chips) on any Product, and code transmitted to Products.

27. “Software Documentation” means a Document that explains how Software operates, how Software was designed, or how a developer may use it. “Software Documentation” includes requirements Documents that identify the attributes, capabilities, characteristics, or qualities of a system, as well as architecture and design Documents that provide an overview of Software and how it relates to other Software (for example, through class or sequence diagrams).

28. The term “person(s)” shall refer to any individual, corporation, proprietorship, association, joint venture, company, partnership, or other business or legal entity, including governmental bodies and agencies.

29. When referring to a person, “identify” or “identification” means to give, to the extent known, the person’s full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

30. “Reflect,” “reflecting,” “relate to,” “relating to,” “refer to,” and “referring to” shall mean reflecting, relating to, referring to, concerning, mentioning, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

31. “Include” and “including” shall mean including without limitation.

# INSTRUCTIONS

1. You are to search all documents within your possession, custody, or control, wherever located, including, but not limited to, any documents placed in storage facilities or in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on your behalf (whether located at his/her residence or place of business), in order to fully respond to the requests herein.

2. You are to produce documents from any single file in the same order as they were found in such file, including any labels, files, folders, and/or containers in which such documents are located or associated with. Documents produced in electronic form must be provided with existing metadata stored with such documents, as well as additional metadata indicative of available information regarding the document's origin, including the document's location in the directory structure in which it was found, its custodian, its authorship information, and information regarding its creation date and last modified date. If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

3. If you do not produce each document or thing requested herein as they are kept in the usual course of business, you must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

4. You are to produce all documents that are responsive, in whole or in part, to any of the requests herein in full, without abridgement, abbreviation, or expurgation of any sort. If any such documents cannot be produced in full, produce the document to the extent possible and indicate in your written response what portion of the document is not produced and why it could not be produced.

5. You are required to produce not only the original or an exact copy of the original of all documents or things responsive to any of the requests herein, but also all copies of such documents or things which bear any notes or markings not found on the originals and all preliminary, intermediate, final, and revised drafts or embodiments of such documents or things. You are also required to produce all versions of the foregoing documents stored by a computer internally, on disk, on CD-ROM, or on tape.

6. You are to produce any purportedly privileged document containing non-privileged matter, with the purportedly privileged portion excised.

7. If any of the documents requested herein are no longer in your possession, custody, or control, you are requested to identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

8. If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction, and the name of the person who ordered or authorized such destruction.

9. Electronic and computerized materials must be produced in an intelligible format, or together with a description of the system from which they were derived sufficient to permit rendering of the material intelligible.

10. If any documents or materials responsive to this subpoena are confidential, you are to produce such materials nonetheless, although you may mark them as containing confidential information as set forth in the Protective Order in force in this investigation, a copy of which is attached hereto as **Exhibit 1**.

11. If the production of any documents responsive to these requests is objected to on the ground of privilege or work product, or for any other reason, with respect to each such document, state:

(a) the date appearing on such document, or if no date appears, the date on which such document was prepared;

(b) the name of each person to whom such document was addressed;

(c) the name of each person, other than the addressee(s) identified in subparagraph (b) above, to whom such document or copy thereof was sent, or with whom such document was discussed;

(d) the name of each person who signed such document or, if not signed, the name of each person who prepared it;

(e) the name of each person making any contribution to the authorship of such document;

(f) the job title or position of each person identified in subparagraph (b), (c), (d) and (e) above;

(g) the date such document was received or discussed by each person identified in subparagraphs (b) or (c) above;

(h) the general nature or description of such document and its number of pages; and

(i) the specific ground(s) upon which the privilege or work product rests.

12. The technical descriptions included in the requests below are intended to aid you in the collection of relevant documents, and not to provide definitions of claim terms or broaden or limit the scope of the claims of the Asserted Patents.

**DOCUMENTS REQUESTED**

1. All supplier, distribution, and/or OEM agreements, licenses, and contracts between FADU and Western Digital/SanDisk regarding FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products.

2. Documents exchanged between FADU and Western Digital/SanDisk and/or made available to Western Digital/SanDisk (e.g., through a portal) related to any FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including, but not limited to, design specifications, technical requirements, product briefs, datasheets, controller specifications, Software, Software Documentation, and interface descriptions.

3. Documents sufficient to identify all FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including, but not limited to, product briefs, datasheets, controller specifications, reference designs, interface descriptions, and all such Documents sufficient to identify by internal and/or external product name, product number, part number or other unique product designation of any such Products You make for, distribute to, supply to, or provide to Western Digital/SanDisk.

4. Documents sufficient to show the design, purpose, structure, function, operation, and/or technical implementation of FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, such Documents including, but not limited to, schematics, block diagrams, application notes, technical requirements, Software Documentation, specifications, manuals, and guides.

5. All Communications between FADU and Western Digital/SanDisk relating to any FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products.

6. All Software and Software Documentation constituting FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products. All versions of such Software and Software Documentation should be produced for all versions of FADU SSD-Related Products provided to Western Digital/SanDisk, and shall include Documents sufficient to relate such Software and Software Documentation versions to such FADU SSD-Related Product versions.

7. Documents exchanged between FADU and Western Digital/SanDisk and/or made available to Western Digital/SanDisk (e.g., through a portal) regarding any standards or interface specifications implemented in, or practiced by, FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, such standards including PCI Express, NVM Express, SD Association standards, or interface descriptions.

8. All Documents relating to testing of FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including testing regarding any standards implemented in or practiced by these Products, or testing regarding the Interrupt Generation Functionality, ECC Generation Functionality, and/or ECC Selection Functionality of these Products.

9. Documents sufficient to identify the persons employed by FADU or by any third party on FADU's behalf, who are most knowledgeable about FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD

Products, including the Interrupt Generation Functionality, ECC Generation Functionality, and/or ECC Selection Functionality of such Products.

10. All Communications between FADU and Western Digital/SanDisk relating to this Action, or relating to any of the Asserted Patents.

# ATTACHMENT B

## DEFINITIONS AND INSTRUCTIONS

The definitions and instructions set forth in Attachment A are incorporated by reference herein.

## TOPICS FOR EXAMINATION

1. FADU's document retention policy.

2. The authenticity, source, and meaning of the documents provided by FADU in response to this subpoena.

3. FADU's search for and collection of documents responsive to this subpoena.

4. All supplier, distribution, and/or OEM agreements, licenses, and contracts between FADU and Western Digital/SanDisk regarding FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products.

5. Documents exchanged between FADU and Western Digital/SanDisk and/or made available to Western Digital/SanDisk (e.g., through a portal) related to any FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including, but not limited to, design specifications, technical requirements, product briefs, datasheets, controller specifications, Software, Software Documentation, and interface descriptions.

6. The identity of all FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including, but not limited to, product briefs, datasheets, controller specifications, reference designs, interface descriptions, and all such Documents sufficient to identify by internal and/or external product name, product number, part number or other unique product designation of any such Products You make for, distribute to, supply to, or provide to Western Digital/SanDisk.

7. The design, purpose, structure, function, operation, and/or technical implementation of FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, such Documents including, but not limited to, schematics, block diagrams, application notes, technical requirements, Software Documentation, specifications, manuals, and guides.

8. All Communications between FADU and Western Digital/SanDisk relating to any FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products.

9. All Software and Software Documentation constituting FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including all versions of FADU SSD-Related Products provided to Western Digital/SanDisk, and the relationship of such Software and Software Documentation versions to such FADU SSD-Related Product versions.

10. Documents exchanged between FADU and Western Digital/SanDisk and/or made available to Western Digital/SanDisk (e.g., through a portal) regarding any standards or interface specifications implemented in, or practiced by, FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, such standards including PCI Express, NVM Express, SD Association standards, or interface descriptions.

11. The testing of FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including testing regarding any standards implemented in or practiced by these Products, or testing regarding the Interrupt Generation Functionality, ECC Generation Functionality, and/or ECC Selection Functionality of these Products.

12. The identity of the persons employed by FADU or by any third party on FADU's behalf, who are most knowledgeable about FADU SSD-Related Products provided to Western Digital/SanDisk or used in the Accused Western Digital/SanDisk SSD Products, including the Interrupt Generation Functionality, ECC Generation Functionality, and/or ECC Selection Functionality of such Products.

13. All Communications between FADU and Western Digital/SanDisk relating to this Action, or relating to any of the Asserted Patents.

# <u>Exhibit 1</u>

# Protective Order

Kenneth G. Parker, SBN 182911
Ken.parker@haynesboone.com
David B. Clark, SBN 275204
David.clark@haynesboone.com
Andrea Levenson, SBN 323926
Andrea.levenson@haynesboone.com
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
T: (949) 202-3000 | F: (949) 202-3001

Stephanie N. Sivinski*
Stephanie.sivinski@haynesboone.com
Caroline W. Fox*
Caroline.fox@haynesboone.com
Marron E. Frith*
Marron.frith@haynesboone.com
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
T: (214) 651-5000 | F: (214) 651-5940
**Admitted Pro Hac Vice*

Attorneys for Defendants
*WESTERN DIGITAL CORPORATION, and*
*WESTERN DIGITAL TECHNOLOGIES, INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

POLARIS POWERLED TECHNOLOGIES, LLC,

Plaintiff,

v.

WESTERN DIGITAL CORPORATION, and WESTERN DIGITAL TECHNOLOGIES, INC.,

Defendants,

CASE NO. 2:24-cv-02864-ODW-MAR

**~~(PROPOSED)~~ STIPULATED PROTECTIVE ORDER**

It is hereby stipulated by the parties that the Court enter the following Order protecting confidentiality of both party and non-party information to be disclosed in these litigations.

1. STATEMENT OF GOOD CAUSE AND PURPOSE

1.1 Statement of Good Cause: Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation is warranted. Specific examples of valuable information that is not publicly known include: (1) confidential licenses, licensing terms, and other licensing strategies and related information; (2) confidential sales, pricing, profit, and other financial information; (3) confidential business, marketing, and strategic plans and forecasts; (4) confidential technical information, including design, engineering and development documents; (5) employee personal information, to the extent such information is produced and not redacted; (6) trade secrets; (7) schematics, Hardware Description Language (HDL) or Register Transfer Level (RTL) files or computer code and associated comments and revision histories; and (8) other information that, if known, would cause competitive harm to the producing party. The parties believe that good cause exists to protect this information produced in discovery because disclosure of such information would or could, among other things, allow competitors to gain competitive advantage based on the confidential, proprietary, or public information.

1.2 Purpose: The purpose of this Order is to protect information produced in discovery from public disclosure, regulate its use in discovery (such as depositions), and require parties receiving information designated under this Order to lodge or file any such material pursuant to Civil Local Rule 79-5 in the event that material is used in court filings or trial. This Order does not confer blanket protections on all disclosures or responses to discovery or relieve any party from its burden of showing good cause to seal information filed with or submitted to the

Court in this action. As set forth in Section 14.3 below, this Protective Order does by itself not entitle the Parties to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2. DEFINITIONS

2.1 Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2 "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that constitute or include information that is not publicly known and that cannot be ascertained from an inspection of publicly available documents.

2.3 Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their respective support staff).

2.4 Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.5 Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced, disclosed or generated in disclosures, responses to discovery, or depositions in this matter.

2.6 Expert: a person who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.7 "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items,"

disclosure of which to another Party or Non-Party, even under the restricted terms and conditions applicable to material designated "CONFIDENTIAL," would not adequately protect the interests of the Designating Party. Examples of HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY material include, but are not limited to, the following:

A. Confidential licenses, licensing terms, and other licensing strategies and related information;

B. Confidential sales, pricing, profit, and other financial information;

C. Confidential business, marketing, and strategic plans and forecasts;

D. Confidential technical information, including design, engineering and development documents;

E. Employee personal information, to the extent such information is produced and not redacted;

F. Trade secrets; and

G. Any other type or category of information which a Producing Party believes must be held in highest level of confidence because it could otherwise create a competitive disadvantage.

2.8 "<u>HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items:</u> "Confidential Information or Items" representing schematics, Hardware Description Language (HDL) or Register Transfer Level (RTL) files or computer code and associated comments and revision histories, the disclosure of which the Parties acknowledge would create a substantial risk of serious harm such that disclosure could not be avoided by less restrictive means ("Source Code"). For avoidance of doubt, Source Code includes, but is not limited to, source files, "include" files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker

files, net lists, circuit schematics, browser info files, debug files, computer code, scripts, assembly, binaries and object code and other human-readable files used in the compilation of Source Code into a software program. The Receiving Party shall not attempt to build or compile the Source Code.

2.09 House Counsel: attorneys who are employees of a Party or a related entity. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party.

2.11 Outside Counsel of Record: attorneys who are not employees of a Party but are retained to represent or advise a Party and have appeared in this action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.12 Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.14 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15 Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.16 Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3. SCOPE

The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party, including but not limited to (i) publicly available advertising materials, (ii) materials that have been published to the general public, or (iii) documents that have been submitted to any governmental entity without request for confidential treatment, or that becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4. DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law. The Court will retain jurisdiction over disputes arising from this stipulated protective order for ninety (90) days after final disposition, as

defined in the preceding sentence.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the designation.

5.2 Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

If a Party or Non-Party identifies a set of documents that are better made available for inspection, the Party or Non-Party may make the original documents or materials available for inspection as they are kept in the ordinary course of business. The Party or Non-Party need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE) as required by this Order.

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record at the deposition or within 5 days of the close of the deposition or at a Court hearing, or other Court proceeding, all protected testimony and specify the level of protection being asserted. Unless otherwise agreed in writing or stated on the record at the deposition, deposition proceedings and transcripts shall be considered "HIGHLY-CONFIDENTIAL – ATTORNEYS' EYES ONLY" for 5 days after the conclusion of the day of deposition. The Parties shall, in good faith, identify unprotected portions of

deposition testimony on the record or promptly when requested by another Party. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party has a right to have up to 21 days from the time the final transcript is available to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are designated for protection within the 21 days shall be covered by the provisions of this Protective Order. A Designating Party may specify that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" subject to review. A Designating Party may also specify that portions of the deposition transcript be identified as containing "HIGHLY CONFIDENTIAL – SOURCE CODE." In the event that the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician pursuant to the terms of this Protective Order to indicate that the contents of the videotape are subject to this Protective Order.

Parties shall use best efforts to give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals including those who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. Counsel for the Producing Party shall have the right to exclude from oral depositions—other than the deponent, the interpreter(s) (if any), the deponent's counsel, the reporter and the videographer (if any)—any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Document 81 Filed 02/20/26 Page 10 of 31 Page ID #:1155

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of the 30- day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) <u>for information produced in some form other than documentary and for any other tangible items</u>, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3 <u>Inadvertent Failures to Designate</u>. If corrected in a manner that does not prejudice the receiving party, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

<u>5.4</u> <u>Export Restriction</u>. "EXPORT-CONTROL-RESTRICTED" documents, information, material, and testimony may not be exported, re-exported, temporarily imported, transferred, or retransferred to any non-U.S. person, country, or entity, by any means, without the appropriate approval of the U.S. Department of

State, Directorate of Defense Trade Controls ("DDTC") for International Traffic in Arms Regulations ("ITAR") Restricted materials, and the U.S. Department of Commerce, Bureau of Industry and Security ("BIS") for Export Administration Regulations ("EAR") Restricted materials. These restrictions also apply to United States citizens and permanent residents employed by a company or organization that falls within the definition of "foreign person." See ITAR, 22 C.F.R. § 120.16. United States persons employed by such a foreign organization or company are not eligible to receive ITAR-controlled information absent an authorization from the DDTC or EAR-controlled information absent an authorization from the BIS.

The parties agree to treat all materials designated by another party as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL – SOURCE CODE," or "EXPORT-CONTROL RESTRICTED" as EXPORT-CONTROL-RESTRICTED materials. Absent appropriate authorization (as explained above) or consent from the Producing Party (as explained below), persons (as defined by ITAR § 120.15) with access to documents treated as EXPORT-CONTROL-RESTRICTED shall not transfer, carry, or send such information to a location outside the United States, including via any electronic device or means, nor otherwise share such information with any person not explicitly authorized to receive such information as set forth above. Nothing in this provision shall serve as a means to encumber a Party's ability to take depositions in this litigation. To the extent the designation of materials as "EXPORT-CONTROL-RESTRICTED" limits a Party's ability to take depositions outside the United States or via remote videoconference (*e.g.*, Zoom), the Parties shall cooperate to make deponents available for deposition in the United States or other mutually agreed upon locations.

Although materials designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL – SOURCE CODE," or "EXPORT-CONTROLLED RESTRICTED" by another party will be treated as

Document 61 Filed 11/20/25 Page 12 of 31 Page ID #:717

EXPORT-CONTROL-RESTRICTED by default as a precautionary measure, the parties anticipate that not all such materials are subject to the above federal export restrictions. If the Receiving Party believes any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL – SOURCE CODE," or "EXPORT-CONTROL-RESTRICTED" materials are not subject to federal export restrictions and can properly be shared with a foreign national under the other provisions of this Order, the Receiving Party may seek consent of the Producing Party to share the document. Consent shall not be withheld except for good cause shown. The restrictions contained within this paragraph do not create or otherwise impose an obligation on the Receiving Party to verify an individual's citizenship, who is permitted to have access under Paragraph 7.3 (c), (e) (f) or (g).

6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2 Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation, with specificity, it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its

belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if (1) it has engaged in this meet and confer process first, or (2) establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3 Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is later. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time after complying with the meet and confer requirements imposed in the preceding paragraph, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision, whether by the Designating Party or Challenging Party, must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. Nothing in this Order shall bar or otherwise restrict any attorney herein from rendering advice to his or her client with respect to this litigation; provided, however, that in rendering such advice and in otherwise communicating with his client, the attorney shall not make specific disclosure of any information or item of the Protected Material. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom disclosure is reasonably necessary for this litigation;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the

"Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.5, below, have been followed;

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, interpreters or translators, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action for the Designating Party, the Producing Party, and any party believed, in good faith, to have knowledge about the document;

(g) the author or recipient appearing on the face of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(h) any mediator who is assigned to hear this matter, and his or her staff.

7.3 Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b) House Counsel of the Receiving Party to whom disclosure is reasonably necessary for this litigation, who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and whose responsibilities through their employment do not include strategic business or general operational duties or decision making for the Receiving Party;

(c) Experts of the Receiving Party (1) to whom disclosure is reasonably

necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.5, below, have been followed;

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, interpreters or translators, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action for the Designating Party or the Producing Party (not the Receiving Party), including former employees whom Receiving Party has a good faith belief had access to the information during their employment with the Designating Party or the Producing Party;

(g) the author or recipients appearing on the face of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(h) any mediator who is assigned to hear this matter, and his or her staff.

7.4 Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;[1]

(b) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth

[1] This Order contemplates that House Counsel shall not have access to any information or items designated "HIGHLY CONFIDENTIAL – SOURCE CODE."

in paragraph 7.5, below, have been followed;

(c) the court and its personnel;

(d) court reporters and their staff, professional jury or trial consultants, interpreters or translators, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);[2]

(e) during their depositions, witnesses in the action for the Designating Party or the Producing Party (not the Receiving Party), including former employees whom Receiving Party has a good faith belief had access to the information during their employment with the Designating Party or the Producing Party; and

(f) the author or recipients appearing on the face of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.5 Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Experts.

(a) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order)[3] any information or item that has been designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY

---

[2] The procedures set forth in Section 7.5 shall also be followed for the requested disclosure of materials designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" to professional jury or trial consultants, interpreters or translators, and Professional Vendors, with the Receiving Party seeking disclosure making a written request to the Designating Party that sets forth the full name of the relevant individual (including the city and state of his or her primary residence and relevant information regarding professional affiliation/background) or entity to whom disclosure is requested in lieu of the requirements set forth in Section 7.5(a) for Experts. The procedures for objecting and resolution set forth in Sections 7.5(b) and 7.5(c) as to Experts shall apply to professional jury or trial consultants, interpreters or translators, and Professional Vendors.

[3] For clarity, while this provision sets forth the requirements for disclosure of Experts, this Protective Order does not require members of an Expert's staff to be disclosed under Section 7.5.

CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.2, 7.3, or 7.4 first must make a written request to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume and the "Acknowledgement and Agreement to be Bound," (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years,[4] and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within 7 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the

---

[4] If the Expert believes any of this information is subject to a confidentiality obligation to a Non-Party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

reasons why disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

8. PROSECUTION BAR

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting or amending patent claims. To avoid any doubt, "prosecution" does not include representing a party during a post-issuance proceeding before a domestic or foreign agency (including, but not limited to, a reissue, *ex parte* reexamination or *inter partes* reexamination) so long as the individual does not participate in any way in drafting or amending patent claims. For the sake of clarity, the preceding sentence includes advising, counseling or any other input into drafting and amending claims. "Prosecution" also does not include representing a petitioner in a post-issuance proceeding before a domestic or foreign

agency. This Prosecution Bar shall begin when a person has accessed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information and shall end one (1) year after final termination of this action, including final resolution of any appeals or after the time to appeal has expired without an appeal having been filed.

9. SOURCE CODE

(a) To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL – SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b) Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, including the Prosecution Bar set forth in Paragraph 8, and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraph 7.3.

(c) Any Source Code produced in discovery shall be made available for inspection as it is kept in the ordinary course of business (including but not limited to in native form and in the file-naming and directory structure in which it is ordinarily kept), in a format allowing it to be reasonably reviewed and searched, during normal business hours (or at other mutually agreeable times), at an office of the Producing Party's counsel or another mutually agreed upon location that is reasonably convenient for the Receiving Party and any experts to whom the source code may be disclosed, or, in the case of Non-Party Source Code, at a location designated by the Non-Party. Upon initial inspection, the Receiving Party shall give at least ten (10) days prior written notice of its intent to review Source Code. Written notices of subsequent inspections shall be made at least two (2) business days prior to the intended start of the review. The Source Code shall be made

available for inspection in a secured room ("Source Code Room") on a secured computer without Internet access or network access to other computers ("Source Code Computer"), and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the Source Code onto any recordable media or recordable device. The Producing Party may designate a person to periodically visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code, and shall allow for conferences between the Receiving Party's representatives without interference so long as those conferences fall within and abide by the rules and restrictions set forth herein. The inspection may not be monitored using mechanical, software or electronic means, including video cameras, still cameras or keyloggers. The use of any laptop computer with its camera enabled, recordable media, or recordable device (*e.g.*, USB memory stick, CDs, portable hard drives, cameras (including cellular phones with camera functionality), sound recorders, etc.) is prohibited while accessing the Protected Code Computer, and no such devices or media shall be permitted in the Source Code Room.

The Source Code Computer shall be equipped with one full size LCD monitor (no smaller than 24 inches diagonally), a full-size keyboard, and a mouse. The Source Code Computer shall include software utilities that provide the ability to (a) view, search, and identify the line number of any source file, (b) search for a given pattern of text through multiple files, and (c) compare two files. Acceptable software utilities for source code include Notepad++ and Eclipse. Default Windows programs such as Notepad are not sufficient. Schematics shall be produced using the software used by the Producing Party to access the schematics during the normal course of business. In addition to these tools, the Receiving Party may request that commercially available software tools for reviewing and searching Source Code be installed on the Source Code Computer, provided, however, that (a)

the Receiving Party possesses any appropriate license to such software tools which may be transferred to the Producing Party for the purposes of the inspection, or reimburses the Producing Party for the costs to obtain a license to such software tools; (b) the Producing Party approves such software tools (such approval shall not be unreasonably withheld); and (c) the request to install the software tools is made at least five (5) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer. To the extent only the Receiving Party possesses or has access to the software tools, the Receiving Party must provide the Producing Party with the licensed software tool(s) at least five (5) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer if the Producing Party does not object to such installation. If the Producing Party objects to a software tool requested by the Receiving Party, it shall, within three (3) business days of receiving the Receiving Party's request, initiate the dispute resolution process set forth in Paragraph 6. For emphasis, it should be noted that Source Code review tools may not be used to circumvent the protections of this Protective Order in any way. The electronic Source Code shall be produced in a manner that preserves filenames and directory structures. The Receiving Party's Outside Counsel of Record and/or Experts shall be entitled to take notes relating to the Source Code, including on a laptop computer without a camera or with its camera disabled, but may not copy the Source Code into their notes. Any notes relating to the Source Code shall be subject to all of the restrictions of the "HIGHLY CONFIDENTIAL – SOURCE CODE" designation. The inadvertent leaving of materials in the Source Code Room does not operate as a waiver of the attorney work product doctrine or any other applicable privilege and such materials shall be returned to their owner promptly. No copies of all or any portion of the Source Code may leave the Source Code Room except as otherwise provided in this Protective Order. Further, no other written or electronic record of

the Source Code is permitted except as otherwise provided in this Protective Order.

(d) During or after a Source Code inspection, the Receiving Party may request that the Producing Party print specified portions of the Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purpose of reviewing the Source Code other than electronically as set forth in paragraph (c) in the first instance. Should the Producing Party believe the requested number or content of the printouts is excessive, the parties shall meet and confer regarding the request. If the concerns cannot be resolved, the Producing Party shall file for a protective order within five (5) business days of the Parties' conference. Unless it objects to the request, within three (3) business days of receiving a request for paper copies of Source Code from the Receiving Party, the Producing Party shall provide the requested portions of Source Code in paper form to the Receiving Party, with bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE." If the Producing Party objects to the amount of Source Code requested by the Receiving Party in paper form, it shall, within two (2) business days of receiving the Receiving Party's request, initiate the dispute resolution process set forth in Paragraph 6.

(e) The Receiving Party shall maintain a record of the address where each paper copy of the Source Code is kept or moved and maintain a record indicating any individual who has inspected any portion of the Source Code in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the Source Code in a secured, locked area when not in immediate use. In addition, the Receiving Party may ship paper copies of printed portions of the Source Code via a secure courier delivery service, signature required (e.g., Federal Express) to persons authorized to access same under this Protective Order, who shall also maintain all paper copies of any printed portions of the Source Code in a secured, locked area when not in immediate use. The Receiving Party shall not create

any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format, except small excerpts thereof reasonably necessary for court filings, expert reports, discovery responses and other similar documents. All such documents shall be clearly marked "HIGHLY CONFIDENTIAL – SOURCE CODE" and, if filed, shall be filed under seal. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including expert reports), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

10. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE," that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[5] If the Designating Party timely seeks a protective order, the Party served with the subpoena

[5] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

Document 681-2Filed 02/11/2025/26Page 25 49 of 55 Page ID #:1073

or court order shall not produce any information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

11. <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

(a) The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1. promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2. promptly provide the Non-Party with a copy of the Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3. make the information requested available for inspection

by the Non-Party.

(c) If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[6] Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

12. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

13.1 Inadvertent or unintentional production of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" documents or information without such designations shall not be deemed a waiver in whole or in part of a claim for treatment as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

[6] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE." If, through inadvertence, a Producing Party provides any information pursuant to this litigation without marking the information as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" the Producing Party may subsequently inform the Receiving Party of the specific designation of the disclosed information, and the Receiving Party shall treat the disclosed information as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information upon receipt of written notice from the Producing Party. To the extent the Receiving Party has already disclosed such information, the Receiving Party shall use its best efforts to promptly collect any copies of disclosed material that have been provided to individuals other than those authorized under this Protective Order, and if collected, shall destroy or return them to the Producing Party.

13.2 An inadvertent failure to designate does not relieve a recipient of obligations under ITAR and EAR. Furthermore, ITAR and EAR contain additional provisions relating to the disclosure of any actual or suspected infractions regarding "EXPORT-CONTROL-RESTRICTED" documents and things.[7] Any party aware of actual or suspected violations of ITAR and/or EAR will immediately inform, and await further instructions from, the Producing Party.

13.2 If a Producing Party inadvertently produces a document, tangible item or electronically stored information that it later discovers or in good faith asserts to be privileged, protected by the work product doctrine, or subject to some other immunity from disclosure ("Privileged Material") the production of that Privileged Material shall not be deemed to constitute a waiver of any applicable privileges, work product protection, or immunity from disclosure. In such circumstances, upon

[7] See, e.g., ITAR, 22 C.F.R. § 127.12; EAR, 15 C.F.R. §§ 730-44.

discovery of the inadvertent disclosure, the Producing Party shall immediately notify the Receiving Party of the inadvertent production, and request either the return or confirmation of destruction of the Privileged Materials. Within five (5) business days of receiving such notification, the Receiving Party shall return or confirm destruction of all such materials. Such return or confirmation of destruction shall not preclude the Receiving Party from seeking to compel production of the materials (based on information independent of the content of the returned, allegedly privileged materials in question) and shall not constitute an admission by the Receiving Party that the materials were, in fact, privileged or otherwise protected in any way. The Producing Party shall retain the Privileged Material for submission to the Court in the event the Receiving Party moves to compel.

14. MISCELLANEOUS

14.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

14.2 Right to Assert Other Objections. No Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3 Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. In order to be treated as confidential, any materials filed with the Court must be lodged with a request for filing under seal in compliance with Civil Local Rule 79-5. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5 unless otherwise instructed by the court.

15. FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Outside Counsel of Record need not purge its document management system or backup tapes to eliminate Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**SO STIPULATED:**

DATED: January 27, 2025

KRAMER ALBERTI LIM &
TONKOVICH LLP

By: */s/Robert F. Kramer*
ROBERT F. KRAMER
DAVID ALBERTI
SAL LIM
RUSSELL S. TONKOVICH
LAWRENCE G. MCDONOUGH
JEREMIAH ARMSTRONG
HONG S. LIN

AIDAN BREWSTER

*Attorney For Plaintiff POLARIS POWERLED TECHNOLOGIES, LLC*

DATED: January 27, 2025

HAYNES AND BOONE, LLP

By: */s/David B. Clark*
KENNETH G. PARKER
DAVID B. CLARK
ANDREA LEVENSON
STEPHANIE N. SIVINSKI
CAROLINE W. FOX
MARRON E. FRITH

*Attorneys for Defendants WESTERN DIGITAL CORPORATION and WESTERN DIGITAL TECHNOLOGIES, INC.*

**L.R. 5-4.3.4(a)(2)(i) Attestation:**

I hereby attest that all signatories listed above, on whose behalf this stipulation is submitted, concur in the filing's content and have authorized the filing.

/s/David B. Clark
David B. Clark

**IT IS SO ORDERED.**

DATED: 2/11/2025

_ Hon. Judge Margo A. Rocconi

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, ________________________________ [print or type full name], of _____________________________________ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on ____________________ [date] in the case of *Polaris PowerLED Technologies, LLC v. Western Digital Corporation, et al.*, Case No. 2:24-cv-02864-ODW-MAR. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____________________________ [print or type full name] of ___________________________________________ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: __________________________________________

City and State where sworn and signed: _____________________________________

Printed name: __________________________________

Signature: _____________________________________