TRAVIS JENSEN (SBN 259925)
tjensen@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

*Attorneys for Specially Appearing Interested Non-Party MICROCHIP TECHNOLOGY INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

POLARIS POWERLED TECHNOLOGIES, LLC,

Plaintiff,

v.

SANDISK CORPORATION AND SANDISK TECHNOLOGIES, INC.,

Defendants.

Case No.: 2:24-cv-02864-ODW-MAR

**SPECIALLY APPEARING INTERESTED NON-PARTY MICROCHIP TECHNOLOGY INC.'S OPPOSITION TO SANDISK'S *EX PARTE* APPLICATION (DKT. 197)**

Judge: Hon. Otis D. Wright II

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. Sandisk Waited Until Six Weeks Before the Cutoff to Seek a Deposition ..... 2
B. Microchip Cooperated, and Sandisk Set the Calendar ..... 3
C. The Magistrate Judge Denied Sandisk's First Application for Lack of Diligence ..... 4
D. Sandisk Files a Second Application ..... 4
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 5
A. Sandisk Created the Purported "Crisis," as the Magistrate Judge Already Found ..... 5
B. The Court's Ruling on Polaris's Application Requires the Same Result ..... 7
C. Sandisk Shows No Prejudice, Because the Deposition Would Add Nothing ..... 8
D. The Proposed Order Would Compel a Deposition No Court Has Found Proper ..... 9
E. The Application Misuses the *Ex Parte* Process ..... 10
V. CONCLUSION ..... 11

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ........ 8, 9

*In re Intermagnetics Am., Inc.*, 101 B.R. 191 (C.D. Cal. 1989) ........ 11

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ........ 5

*Microchip Tech. Inc. v. Sandisk Corp.*, No. 2:26-mc-00121-ODW-MAR, Dkt. 30 ........ 1, 2, 4, 10

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) ........ *passim*

*Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252 (S.D.N.Y. 2024) ........ 9

**Statutes**

N.D. Cal. Civ. L.R. 7-2(a) ........ 7

**Other Authorities**

Fed. R. Civ. P. 16(b)(4) ........ 5, 7

Fed. R. Civ. P. 30(b)(6) ........ 6

Fed. R. Civ. P. 45 ........ 10

Fed. R. Civ. P. 45(d)(3)(A)(iv) ........ 10

Specially appearing interested non-party Microchip Technology Inc. ("Microchip") opposes the *Ex Parte* Application for Limited Modification of Scheduling Order filed by Defendants Sandisk Corporation and Sandisk Technologies, Inc. (collectively "Sandisk"). Dkt. 197 (the "Application"). Sandisk served the Application on Microchip at 10:10 p.m. PT on Tuesday, November 24, 2026. Declaration of Travis Jensen ("Jensen Decl.") ¶10. Microchip files this opposition within 24 hours of service, so it is timely under the Court's Procedures. Microchip has never appeared in this action. Microchip is aware that Polaris filed an opposition (Dkt. 198) to Sandisk's Application, but Microchip appears now for the limited purpose of providing its own, independent opposition given that the Application seeks an order compelling Microchip to act. *See* Dkt. 197-2 ¶ 3; Fed. R. Civ. P. 26(c)(1). Microchip does so in an abundance of caution and to avoid any appearance of acquiescence to Sandisk's Application that silence may present.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Sandisk's Application is frivolous. Four days after Magistrate Judge Rocconi denied Sandisk's first *Ex Parte* Application for a post-cutoff deposition of Microchip for lack of diligence, Sandisk filed a second one here. The first request failed because Magistrate Rocconi found that Sandisk "cannot establish [it is] 'without fault' in creating the current crisis." *Microchip Tech. Inc. v. Sandisk Corp.*, No. 2:26-mc-00121-ODW-MAR ("Miscellaneous Action"), Dkt. 30 at 2. Sandisk knew long ago that Microchip (or its predecessors-in-interest) originally owned the asserted patents because that information is reflected on the face of the patents. And Polaris produced its agreements with Microchip (which Sandisk says justify a deposition) more than two years ago. Misc. Dkt. 23-2 (email showing Polaris production date of Oct. 2, 2024). Even after the stay was lifted in January of 2026 (Dkt. 86), Sandisk waited eight months to serve a deposition subpoena on Sandisk (*see* Misc. Dkt. 1-03,

showing Sept. 4, 2026 subpoena service date). Nothing Sandisk has done since then can change its egregious lack of diligence.

The only thing that has changed is that Sandisk is now asking Judge Wright (instead of Magistrate Rocconi) for relief. Sandisk's current Application never mentions Magistrate Rocconi's express finding (made only 5-days ago) that Sandisk lacked diligence, and it misdescribes the order that made that finding. The same diligence requirement that doomed Sandisk's *Ex Parte* Application before Magistrate Rocconi applies here, and Sandisk's current Application fails for identical reasons.

Moreover, this Court applied the same test nine days ago to deny Polaris's request to extend the same cutoff. Dkt. 186. Sandisk urged that result, reminding the Court that "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have." Dkt. 181 at 2 (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 493 (C.D. Cal. 1995)). The rule Sandisk invoked against Polaris governs Sandisk too.

The Application also misuses the *ex parte* process. Sandisk lacked diligence for years, and then after 10:00 p.m. on the Tuesday before Thanksgiving files its Application, which put Microchip's response deadline after 10:00 p.m. on Thanksgiving Eve. The Court's Procedures reserve *ex parte* applications "solely for extraordinary relief" and warn that "[s]anctions may be imposed for misuse." A second *ex parte* request for relief already denied for lack of diligence, timed to land on a holiday, is that misuse. The Court should deny the Application and Microchip reserves all rights.

## II. BACKGROUND

### A. Sandisk Waited Until Six Weeks Before the Cutoff to Seek a Deposition.

Citations to "Misc. Dkt." refer to the docket of the transferred miscellaneous action, which carries forward the NDCA filings, and pin cites are to ECF page numbers. Polaris sued Sandisk on April 9, 2024. Dkt. 1. On October 2, 2024, Polaris

produced the agreements between Polaris and Microchip or its predecessors that Sandisk now offers as the reason it must depose Microchip. Misc. Dkt. 23-2 at 2. On January 9, 2026, the Court set an October 16, 2026 fact-discovery cutoff. Dkt. 86 at 1.

Western Digital (later substituted for Sandisk) served Microchip with a document subpoena on July 31, 2026, and Microchip produced its agreements with Polaris and its affiliates. Misc. Dkt. 1 at 7; Jensen Decl. ¶ 3. Sandisk did not seek Microchip's testimony until September 4, 2026, when it served a replacement subpoena that added a deposition on twelve topics and set the deposition for San Francisco. Misc. Dkt. 1 at 7; Misc. Dkt. 1-3. Contrary to Sandisk insinuation, the discovery cutoff was then only six weeks away. Ten days later, Sandisk opposed Polaris's motion to extend that cutoff, telling the Court that "[t]here is no reason that fact discovery cannot be completed under the current scheduling order." Dkt. 137 at 9. The Court extended the cutoff to November 13 at Polaris's request. Dkt. 143; Dkt. 186 at 2.

**B. Microchip Cooperated, and Sandisk Set the Calendar.**

Microchip made two document productions and gave Sandisk a sworn declaration in lieu of testimony on eleven of the twelve deposition topics. Misc. Dkt. 1 at 8; Misc. Dkt. 27 at 7. Polaris agreed not to object to that declaration. Misc. Dkt. 1-14 at 2. Microchip never agreed to a deposition. Jensen Decl. ¶ 6.

Sandisk extended Microchip's deadline October 21 in view of the revised discovery cutoff of November 13. *Id.* ¶ 5(c). On October 20, to Microchip's surprise, Sandisk insisted on deposing Microchip and asked Microchip to identify a witness for a deposition. Jensen Decl. ¶ 5(d). Microchip moved to quash on October 21, the date Sandisk had agreed to, in NDCA, where Sandisk had set the deposition (and which was the only proper venue for Microchip's motion). Misc. Dkt. 1. Sandisk asked NDCA to transfer the motion here, which it did. Misc. Dkt. 13 at 3.

**C. The Magistrate Judge Denied Sandisk's First Application for Lack of Diligence.**

On November 5, Sandisk filed its first *Ex Parte* Application to shorten Microchip's time to prepare and file its reply brief, to have the motion decided on the papers, and to require a deposition within a week even if that fell after the discovery cutoff. Misc. Dkt. 20; Misc. Dkt. 30 at 1. On November 9, Polaris served a supplemental interrogatory response that provides the core information Sandisk sought. Misc. Dkt. 27 at 6; Misc. Dkt. 27-2 at 2; Jensen Decl. ¶ 8. Fact discovery closed on November 13. Three days later, this Court denied an *Ex Parte* Application from Polaris to extend the discovery cutoff. Dkt. 186.

On November 20, Magistrate Judge Rocconi denied Sandisk's *Ex Parte* Application in the Miscellaneous Action. She found that Sandisk could not show it was without fault because, when it served the subpoena, "the fact discovery cut-off was less than six-weeks away and discovery had been ongoing for at least eight months." Misc. Dkt. 30 at 3. She denied Microchip's motion to quash as untimely because it could not have been heard before the cutoff, and she did not reach its merits: "whether the Court was inclined to grant or deny the motion [on the merits], the result would be the same." *Id.* at 3–4 & n.2. The Magistrate's denial of Microchip's motion to quash was purely procedural (*viz.*, on timeliness), and ignores that the timing of Microchip's motion to quash was driven by Sandisk's untimeliness and lack of diligence in pursuing discovery from Microchip in the first instance.[1]

**D. Sandisk Files a Second Application.**

Sandisk met and conferred with Microchip on November 24 and filed this Application that night at 10:10 pm PT. Dkt. 197-1 ¶ 13; Jensen Decl. ¶¶ 9–10. The

[1] Sandisk (nor any other party seeking discovery) can insulate itself from a discovery challenge by delaying discovery requests until it is too late for the receiving party to raise an objection. Such a rule turns discovery practice on its head, and Microchip reserves all rights to renew its motion to quash and/or seek reconsideration in the Miscellaneous Action.

Application seeks to move the discovery cutoff so it can depose Microchip, which is the same result Sandisk' previous *Ex Parte* Application already sought and which was denied for lack of diligence. Dkt. 197 at 1; Dkt. 197-2 ¶ 3.

## III. LEGAL STANDARD

A party seeking *ex parte* relief must show (1) why its motion cannot be calendared in the regular manner, (2) that it will be irreparably prejudiced if the motion is heard under regular procedures, and (3) that it is without fault in creating the crisis or that the crisis resulted from excusable neglect. Dkt. 186 at 1 (citing *Mission Power*, 883 F. Supp. at 492). To show it is without fault, the movant "must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Mission Power*, 883 F. Supp. at 493. Modifying a scheduling order also requires good cause, which turns on the movant's diligence. Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

## IV. ARGUMENT

### A. Sandisk Created the Purported "Crisis," as the Magistrate Judge Already Found.

Sandisk's lack of diligence has already been decided. Five days ago, the Magistrate Judge held that Sandisk could not show it was without fault, because it served its subpoena less than six weeks before the cutoff and eight months into discovery. Misc. Dkt. 30 at 2–3. Sandisk does not mention that holding, much less explain why it was wrong.

Sandisk's account of the dates does not survive a comparison with the record. The Application tells the Court that the Magistrate Judge "explained that Sandisk served the deposition subpoena two months before the November 13 fact-discovery deadline." Dkt. 197 at 2 (citing Misc. Dkt. 30 at 3). Page 3 of the order recites Sandisk's "two months" argument and rejects it: when Sandisk served the subpoena,

"the fact discovery cut-off was less than six-weeks away." Misc. Dkt. 30 at 3. The order's only other reference to two months comes in its discussion of the timing of Microchip's motion, measured against "the current cut-off." *Id.* at 4. The extra month Sandisk refers to resulted, after the fact, from an extension it opposed. Dkt. 137 at 9; Dkt. 143. Any additional time for discovery the Court granted over Sandisk's objection is not evidence of Sandisk's diligence.

Sandisk also controlled every date that produced the purported crisis. It chose when to serve the subpoena and where the deposition would occur. It agreed three times to extend Microchip's time to respond to the subpoena, including a date that allegedly left insufficient time for a hearing (ironically, Sandisk opposed having a hearing at all). Jensen Decl. ¶ 5; Misc. Dkt. 30 at 3 & n.1. The Scheduling Order placed the timing constraint squarely on Sandisk by requiring depositions to "commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition prior to the cut-off date." Dkt. 54 at 3. Sandisk never moved to compel.

Sandisk now says its need for Microchip's testimony "crystallized" at Polaris's Rule 30(b)(6) deposition. Dkt. 197 at 8. That deposition took place on October 15, one day before the original cutoff and six weeks after Sandisk had already subpoenaed Microchip. Dkt. 197-1 ¶ 7. The agreements Sandisk asked about had been produced in October 2024. Misc. Dkt. 23-2 at 2. A party that waits until the eve of the original cutoff to examine its opponent's designee about two-year-old documents has not "used the entire discovery period efficiently." *Mission Power*, 883 F. Supp. at 493.

The Application's claim that Microchip moved to quash "[a]t the last minute, and to Sandisk's surprise," Dkt. 197 at 5, gets the history backwards. Microchip produced documents twice and prepared a sworn declaration on eleven topics precisely to avoid a deposition. Misc. Dkt. 27 at 7; Jensen Decl. ¶ 4. It asked Sandisk

to withdraw the subpoena. Jensen Decl. ¶ 5. Sandisk knew a motion was coming if it insisted on a deposition, because on September 29 it extended Microchip's “deadline to move to quash.” *Id.* ¶ 5(b). Microchip then filed on the date Sandisk agreed to. The surprise was Microchip’s: after all that cooperation, Sandisk still insisted on a deposition, even expanding the one remaining topic into six distinct “sub-topics,” which reach well beyond anything in the original subpoena. Misc. Dkt., 2-3 at 8-13.

Sandisk’s assertion that Microchip's motion “did not even notice a hearing as required by the Local Rules,” Dkt. 197 at 9, is also misleading. Microchip’s notice of motion asked NDCA to decide the motion on “such evidence and argument as may be presented at any hearing on this Motion, on a date and time to be set by the Court.” Misc. Dkt. 1 at 5. That district requires motions to be noticed “on the motion calendar of the assigned Judge.” N.D. Cal. Civ. L.R. 7-2(a). No judge had been assigned when Microchip filed, so Microchip could not pick a date from that calendar. That did not mean Microchip declined a hearing or failed to request one. Misc. Dkt. 23 at 13. Once the motion reached this District, Microchip noticed it for hearing on December 2, 2026. Misc. Dkt. 27 at 2. And an earlier hearing date would have changed nothing. A motion filed on October 21 could not have been heard before the cutoff in either district. Misc. Dkt. 30 at 3 & n.1. The timing problem dates to when Sandisk belatedly served the subpoena.

**B. The Court’s Ruling on Polaris’s Application Requires the Same Result.**

Nine days ago, the Court denied Polaris’s *ex parte* request to extend this same cutoff. Dkt. 186. Polaris had relied on representations that more documents were coming. The Court held that this reliance did not justify “foregoing available discovery remedies as the deadline approached,” and that Polaris had shown neither that it was “without fault in creating the asserted emergency” nor “the diligence necessary to establish good cause under Rule 16(b)(4).” *Id.* at 1–2. Sandisk stands on

weaker ground. Polaris asked this Court to modify the schedule four days before the cutoff. Sandisk did not ask until eleven days after it.

Sandisk itself urged that ruling. It argued that Polaris "had almost half a year to compel compliance with its subpoena" to a third party, and that any deficiency "should have been raised directly with [that third party]—or the Court—months ago." Dkt. 181 at 2–3. Sandisk let eight months of discovery pass before it sought Microchip's testimony. It may not hold Polaris to one standard and claim a gentler one for itself.

**C. Sandisk Shows No Prejudice, Because the Deposition Would Add Nothing.**

Irreparable prejudice requires a look at the merits, because if the underlying request "is meritless, failure to hear it cannot be prejudicial." *Mission Power*, 883 F. Supp. at 492. Sandisk claims it will lose testimony that bears "directly on the reasonable-royalty analysis." Dkt. 197 at 7. It will not.

Sandisk already has what it says it needs. Polaris produced the key agreements in October 2024, and Microchip produced its own agreements with Polaris and its affiliates this past summer. Misc. Dkt. 23-2 at 2; Misc. Dkt. 1 at 7. Those agreements set forth the consideration exchanged. Misc. Dkt. 1 at 14. Sandisk does not dispute that they specify how that consideration is determined; it complains only that they do not state the resulting amounts. Misc. Dkt. 9-2 at 16 (filed under seal). Sandisk now has those amounts as well. On November 9, Polaris supplemented its interrogatory response with the core information Sandisk sought. Misc. Dkt. 27 at 6; Jensen Decl. ¶ 8. And Sandisk's own Application recites, in passages redacted from the public version, the very figures it claims it needs a Microchip witness to supply. Dkt. 197 at 4, 7. Whether or not Microchip receives any downstream licensing proceeds, or the amount of such proceeds, has no bearing on infringement, invalidity, or damages.

In particular, Sandisk also identifies no reasonable-royalty factor that the testimony would inform. The fifteen *Georgia-Pacific* factors concern the patents, the

invention and its use, comparable licenses, and the bargain a willing licensor and licensee would have struck when infringement began. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The first factor asks about "royalties received by the patentee for the licensing of the patent in suit." *Id.* Polaris is the patentee, and its licenses are party discovery. No factor asks what becomes of a royalty after the patentee receives it.

Another court has already declined to let a Polaris adversary depose Microchip beyond authenticating documents. It held that Samsung "does not have a need for any other testimony from Microchip" and encouraged a declaration instead. *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 261–62 (S.D.N.Y. 2024). Microchip has already given Sandisk that declaration here, including sworn answers on addressing eleven topics. Misc. Dkt. 1 at 8. Nor has Microchip "already been preparing" a witness, as Sandisk asserts. Dkt. 197 at 8. The transfer order Sandisk cites says nothing of the kind, Misc. Dkt. 13 at 3–4, and Microchip has not prepared a designee for a deposition it never agreed to provide. Jensen Decl. ¶ 6.

### D. The Proposed Order Would Compel a Deposition No Court Has Found Proper.

Even if Sandisk could show good cause to reopen discovery, the Court should not enter its proposed order. The Application asserts that "the Magistrate Judge has already resolved Microchip's objections by denying the motion to quash"" Dkt. 197 at 7. She did not. She denied the motion as untimely and expressly declined to reach its merits. Misc. Dkt. 30 at 3–4 & n.2. NDCA transferred the motion so that this District would decide whether the deposition is proportional and proper. Misc. Dkt. 13 at 3–4. No court has yet done so.

The untimeliness ruling also rested entirely on the cutoff: the motion was untimely because it could not be heard before November 13. Misc. Dkt. 30 at 3–4. Sandisk now asks the Court to set that cutoff aside. It cannot use the cutoff to defeat Microchip's motion and then ask the Court to lift it to compel the very deposition the

motion challenged. Nor can a party insulate a subpoena from review by serving it too late for a motion to be heard before the cutoff. Rule 45 requires the court, "[o]n timely motion," to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Microchip moved on the date Sandisk agreed to. If discovery reopens for Sandisk, Microchip's objections must first be decided on their merits by the Magistrate Judge, who "will rule on discovery motions" in this case. Dkt. 54 at 3.

If the Court is inclined to grant any relief, Microchip asks that the Court direct that Microchip's objections be decided on the merits by Magistrate Judge Rocconi.

**E. The Application Misuses the *Ex Parte* Process.**

*Ex parte* applications "are solely for extraordinary relief and should be used with discretion," and "[s]anctions may be imposed for misuse of *ex parte* applications." Judge Wright's Procedures § VII(D) (citing *Mission Power*, 883 F. Supp. 488). *Mission Power* explains why. On *ex parte* papers, "the parties' opportunities to prepare are grossly unbalanced": the movant's papers "reflect days, even weeks, of investigation and preparation," while "the opposing party has perhaps a day or two." 883 F. Supp. at 490. "The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice." *Id.*

This Application fits that description. It is Sandisk's second *ex parte* request for the same post-cutoff deposition, filed after the first was denied for lack of diligence. Sandisk filed after 10:00 p.m. on Tuesday, November 24, setting Microchip's deadline for the night before Thanksgiving. Jensen Decl. ¶ 10. And this followed after an unsuccessful *Ex Parte* Application (denied for Sandisk's own lack of diligence) in the Miscellaneous Action. A party that the Magistrate Judge found responsible for its own deadline problem cannot cure that finding by manufacturing a second emergency. "*Ex parte* applications are not intended to save the day for parties who have failed to present requests when they should have." *Mission Power*, 883 F.

Supp. at 493 (quoting *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989)).

## V. CONCLUSION

The Court should deny the Application and leave all existing deadlines in effect.

Dated: November 25, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Travis Jensen*
Travis Jensen

TRAVIS JENSEN (SBN 259925)
tjensen@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

*Attorneys for Specially Appearing Interested Non-Party MICROCHIP TECHNOLOGY INC.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Non-Party Microchip Technology Inc., certifies that this brief contains 3,446 words, which complies with the word limit of L.R. 11-6.1.

*/s/Travis Jensen*
Travis Jensen